■ In the Matter of JANICE COYNE, Appellant, v MICHAEL COYNE, Respondent.—In custody proceeding for modification of so much of a stipulation dated September 2, 1987, as awarded

custody of the infant daughter to the mother and granted the father visitation, the petitioner mother appeals from an order of the Family Court, Orange County (Ludmerer, J.), entered December 21, 1988, which, after a hearing, *inter alia,* granted the father's application to transfer custody of the parties' infant daughter to him.

Ordered that the order is reversed, on the law and the facts and in the exercise of discretion, without costs or disbursements, the application is denied, and the terms of the parties' stipulation dated September 2, 1987 with respect to custody and visitation are reinstated.

Custody of the parties' infant daughter Rachel, born November 27, 1979, was granted to the mother with visitation rights to the father pursuant to an oral stipulation of the parties entered in the minutes of a court proceeding on August 29, 1984. In a court proceeding on September 2, 1987, the parties entered into an oral stipulation concerning the father's visitation rights. The mother subsequently moved to suspend the father's visitation with Rachel on the ground that visitation with the father was detrimental to Rachel's emotional welfare. The father cross-moved for a transfer of custody of the infant to him claiming that the mother had interfered with his visitation rights and, due to her hostility toward him, had adversely affected Rachel's emotional and psychological well-being. Following a hearing at which several mental health professionals testified, and an in camera interview with the infant, the Family Court, *inter alia,* transferred custody of the infant from the mother to the father. This appeal ensued.

Initially, we note that our authority in matters of custody is as broad as that of the trial court *(see, Matter of Louise E. S. v W. Stephen S.,* 64 NY2d 946; *Leistner v Leistner,* 137 AD2d 499). In this regard, the trial court's determination based upon a firsthand assessment of the credibility of the witnesses and of the character and temperament of the parents is to be accorded great deference on review and should not be set aside where it is in conformity with the evidence *(see, Matter of Louise E. S. v W. Stephen S., supra,* at 947; *Eschbach v Eschbach,* 56 NY2d 167, 174; *Skolnick v Skolnick,* 142 AD2d 570). On the other hand, "[a]n appellate court would be seriously remiss if, simply in deference to the finding of a Trial Judge, it allowed a custody determination to stand where it lacks a sound and substantial basis in the record" *(Matter of Gloria S. v Richard B.,* 80 AD2d 72, 76; *see also, Skolnick v Skolnick, supra).* The instant determination to transfer custody lacks a sound and substantial basis in the

record and we, therefore, reverse and reinstate the original custody and visitation provisions of the September 2, 1987 stipulation.

It is beyond cavil that the totality of the circumstances is to be considered in determining whether custody should be changed, with the preeminent concern being the best interest of the child (see, *Eschbach v Eschbach, supra,* at 171; *Friederwitzer v Friederwitzer,* 55 NY2d 89, 93). In the absence of extraordinary circumstances, priority should be given to the parent who was awarded custody by voluntary agreement (see, *Eschbach v Eschbach, supra; Matter of Nehra v Uhlar,* 43 NY2d 242, 251; *Robert C. R. v Victoria R.,* 143 AD2d 262, 264). While such an agreement is not determinative of whether a change of custody is warranted, it is weighted heavily to ensure stability in the child's life.

The parties' daughter, who was nine years old at the time the order appealed from was entered, has lived with her mother her entire life, the latter part of which has been pursuant to a voluntary agreement of the parties. The record clearly indicates that there are strong bonds between the mother and the child, who was doing well in school. The record also contains evidence that Rachel has been experiencing a great deal of stress and anxiety stemming from visitation with her father, but also indicates that the child's apparent emotional instability and negative feelings toward her father were fostered, in part, by the hostility of the mother and the maternal grandmother toward him. However, the child had indicated that her problems with visitation were also due to her father's lack of attention. The child was asked whether she would want to reside with her father, she answered no and expressed a strong preference to curtail her visits with her father.

The psychiatrist who performed the court-ordered evaluation of the parties found that the mother's negative attitude was jeopardizing Rachel's relationship with her father and that Rachel was in a turmoil over the visitation issue. Significantly, however, this medical expert stressed that he was making no recommendation of a transfer of custody and his evaluation of custody would be different than his evaluation of visitation.

The mother's medical expert, without interviewing the father, recommended that the father's visitation with Rachel take place in a therapeutic setting. However, he did not express any opinion as to a change of custody.

Of even greater significance is the report of the Law Guardian who concluded that in light of the strong bond between Rachel and her mother, a change of custody would not be in the child's best interest and that visitation with the father should not only continue but be expanded. The Law Guardian recommended court-mandated counseling for the mother. Moreover, if the mother continued to undermine Rachel's relationship with her father, it was recommended that custody be reconsidered.

Although it appears that the mother has engaged in conduct antithetical to the best interest of the parties' child, we find that the Family Court's order transferring custody to the father was a drastic and inappropriate remedy given the totality of circumstances evident on this record. Notwithstanding our finding that the best interest of the child will be served by maintaining custody with the mother, we take this opportunity to remind the mother that "interference with the relationship between a child and a noncustodial parent by the custodial parent has been said to be an act so inconsistent with the best interests of the child as to per se raise a strong probability that the offending party is unfit to act as a custodial parent" (Leistner v Leistner, 137 AD2d 499, 500, supra; see also, Daghir v Daghir, 82 AD2d 191, affd 56 NY2d 938; Skolnick v Skolnick, supra).

We also note that in view of the obvious deep-rooted hostility of the mother toward the father and its harmful effect upon the parties' child, the parties and the child would benefit from, and should submit to, family counseling or another appropriate form of therapy (see, Bubbins v Bubbins, 136 AD2d 672). Mollen, P. J., Thompson, Kunzeman and Rubin, JJ., concur.