◼ In the Matter of A. F., Appellant-Respondent, v N. F., Respondent-Appellant.—In consolidated proceedings pursuant

to Family Court Act article 6, *inter alia,* to modify an order awarding the parties joint custody of their child, the mother appeals from (1) a judgment of the Family Court, Westchester County (Spitz, J.), entered January 13, 1989, which, after a hearing, held the mother in contempt of the court's prior visitation orders and imposed a fine, (2) an order of the same court, entered July 10, 1989, which, after a hearing, *inter alia,* granted the father's cross petition for sole custody of the child and dismissed the mother's petition for the same relief, (3) an order of the same court, entered July 27, 1989, fixing visitation, and (4) an order of protection of the same court, also entered July 27, 1989, which prohibits the mother from allowing the child any contact with the child's maternal grandfather and half brother; and the father cross-appeals, as limited by his oral argument, from so much of the order entered July 27, 1989 as awarded the mother visitation.

Ordered that the judgment entered January 13, 1989 is reversed, in the exercise of discretion, and the application to hold the mother in contempt is denied, without costs or disbursements; and it is further,

Ordered that the order entered July 10, 1989 is reversed, on the facts and in the exercise of discretion, without costs or disbursements, the mother's petition for sole custody of the child is granted, and the father's cross petition for sole custody is denied; and it is further,

Ordered that the order entered July 27, 1989 fixing visitation is reversed, on the law, without costs or disbursements, and the matter is remitted to the Family Court, Westchester County, to determine a visitation schedule in accordance herewith; and it is further,

Ordered that the order of protection, also entered July 27, 1989 is modified, on the facts and in the exercise of discretion, by deleting the following language: "shall not leave the child * * * alone at any time with the [half] brother"; as so modified, the order is affirmed, without costs or disbursements.

The parties were married in August 1984 and were ultimately divorced by judgment entered January 22, 1988. Their daughter, who is the subject of these proceedings, was born in November 1984. By order dated August 21, 1986, the Family Court, on consent of the parties, awarded them joint custody of their daughter, who was to reside with the mother except when the father had regularly scheduled time off from his employment, at which time the child was to reside with him. This custody arrangement, however, was marred by the par-

ties' hostility toward one another, which, in December 1987, culminated in an order of protection against the father and in favor of the mother, made after a hearing, upon her complaint that the father had assaulted her. The court also directed that the father's visitation be supervised by the "probation department" based on the mother's allegations that he sexually abused the child.

The mother's relocation to Massachusetts in late October or early November 1987 precipitated opposing petitions by the parties to obtain sole custody of the child.

In April 1988 the Family Court directed that the child's visitation with the father take place at the residence of and under the supervision of the child's godmother. Nevertheless, the mother continued to be concerned about the possible sexual abuse of the child by the father and made a complaint to the Massachusetts Department of Social Services (hereinafter the Massachusetts DSS). In July 1988, the Family Court denied the mother's application to stay the order providing for the father's supervised visitation, concluding that the evidence did not support a finding that continued supervised visitation would harm the child. Thereafter, the child's godmother refused to continue to supervise visitation. Accordingly, in October 1988, the court granted the father's application to substitute the child's paternal grandmother, with whom he lived, to supervise visitation. However, the mother failed to deliver the child to the father for the October visitation.

On or about October 5, 1988, the father moved to hold the mother in contempt of court for failure to comply with the October visitation order. The mother opposed his application, claiming that because her fears of sexual abuse were substantiated by the evaluation conducted by the Massachusetts DSS she was unwilling to subject the child to visitation at the father's residence. She did not deny her knowledge of the October visitation order and by judgment entered January 13, 1989, was held to be in contempt "by her own admission". The Family Court also directed her to pay a $100 fine to the father.

Meanwhile, by order dated October 14, 1988, the Family Court had suspended the father's visitation based on the report of the Massachusetts DSS containing expert opinion substantiating the allegations of sexual abuse of the child by the father.

Thereafter a hearing was held with respect to the opposing custody petitions. Both the mother and the father supported

their claim to primary custodianship by producing psychiatric testimony. The psychiatrist who performed the court-ordered evaluation of the parties found that neither party had any serious mental or personality disorders, but his evaluation regarding the allegations of sexual abuse of the child was inconclusive. Following the lengthy hearing, the court granted primary custody to the father and subsequently fixed a visitation schedule for the mother. For the reasons which follow, we reverse and award primary custody of the child to the mother.

The overriding concern where custody is in issue must be the best interests of the child (Domestic Relations Law §§ 70, 240). The question of the custody of children is ordinarily a matter of discretion for the trial court, and if a custody decision is supported by evidence that has been developed in a manner consistent with due process, it will not be disturbed on appeal *(see, Eschbach v Eschbach,* 56 NY2d 167; *Matter of Lyons v Lyons,* 112 AD2d 232, 233). Nonetheless, "[a]n appellate court would be seriously remiss if, simply in deference to the finding of a Trial Judge, it allowed a custody determination to stand where it lacks a sound and substantial basis in the record" *(Matter of Gloria S. v Richard B.,* 80 AD2d 72, 76; *see, Skolnick v Skolnick,* 142 AD2d 570). That is the case here. We find that the best interests of the child would be served by returning her to the primary custody of her mother.

The most troubling aspect of this dispute relates to the allegations of sexual abuse. The Family Court made no finding regarding the claims of sexual abuse, and addressed this issue only briefly in its written decision dated June 20, 1989. The court did not address the most recent evaluation of the child which was performed by a Massachusetts psychiatrist following a visit with the father during which the abuse allegedly occurred. That psychiatrist found the child to be suffering from "post traumatic distress disorder". The recommendations of the court-appointed evaluator, upon whose report the Family Court relied, stated that further evaluations were required and that visitation with the father should continue under supervision. However, because other experts who have evaluated the child indicate that further evaluations would be emotionally damaging to her, we reject this solution as not being in her best interests *(cf., Skolnick v Skolnick,* 142 AD2d 570, *supra).* Although it cannot be conclusively stated that the father abused the child, we share the Law Guardian's concern that the father's habits, which the New York court evaluator referred to as a "possible fixation" on the child's "vaginal infections", may create in the young child confusion about her

body and appropriate sexual behavior. This concern is enhanced by the father's testimony that he persisted in touching the child's genital area to apply medication notwithstanding that he had been accused of molesting the child and could easily have called on his female relatives to administer this medication.

The present case also presents the problem of the mother's relocation, which she alleges was compelled by the father's violence towards her. Rather than giving due consideration to the mother's valid concern for her own safety and that of the child, the Family Court was unduly influenced by the mother's admission that she believed that the courts would "look the other way" and not penalize her if she relocated to Massachusetts with the child. While in some circumstances the very act of interfering with visitation is "so inconsistent with the best interests of the chil[d] as to, per se, raise a strong probability that the [offending party] is unfit to act as custodial parent" *(Entwistle v Entwistle,* 61 AD2d 380, 384-385, *appeal dismissed* 44 NY2d 851; *Matter of Coyne v Coyne,* 150 AD2d 573), we do not believe that to be the case here. Moreover, it is by no means clear in this case that the father would be more willing to respect the visitation rights of the mother. We also find that the mother's new residence, in terms of the distance involved, will not unreasonably interfere with visitation by the father *(see, Matter of Schouten v Schouten,* 155 AD2d 461; *Blundell v Blundell,* 150 AD2d 321).

While the evidence that the father has acted violently towards the mother does not automatically warrant denial of custody, this type of behavior, especially where it occurs in the presence of the child, does relate to the parties' respective abilities to assume the role of primary custodian *(see, Keating v Keating,* 147 AD2d 675; *Matter of Fountain v Fountain,* 83 AD2d 694, 695 [Herlihy, J., dissenting]).

Among the circumstances to be considered in determining custody are the quality of the home environment and the parental guidance the custodial parent will provide for the child *(Eschbach v Eschbach,* 56 NY2d 167, *supra).* The court-appointed evaluator found that the child, who has spent most of her life with her mother, was remarkably happy and bright. While the Family Court was influenced by the mother's living arrangements, which involved shared accommodations, in denying her primary custody, we are cognizant that this was a transition period for the mother. The mother has since obtained a "clean and tastefully furnished" duplex apartment "well away from major thoroughfares". The child,

when in the custody of her father, shares his basement apartment, and her bedroom, while separate, leads from the father's bedroom. The child has also been separated from her half siblings who reside with the mother, and "the stability and companionship to be gained from keeping the children together is an important factor for the court to consider" *(Eschbach v Eschbach, supra,* at 173).

In granting the mother visitation, the Family Court made an order prohibiting the child from being alone with her half brother during visitation. While we do not find fault with the court's motives in making that direction, our view is that the half brother, who is little more than a child himself, has been made a victim in this bitter custody dispute. We find that the testimony that he has engaged in sexual behavior with younger children was not credible. However, the court's determination that an order of protection against the maternal grandfather was warranted does have a substantial basis in the record.

Because the child is to be returned to the mother's custody we remit the matter to the Family Court to establish a visitation schedule for the father *(see, Bubbins v Bubbins,* 136 AD2d 672), and we direct that such visitation be supervised.

Finally, in light of all the circumstances, especially considering that shortly after the mother's failure to deliver the child to the father's home for visitation the court suspended the father's visitation on the basis of the report of the Massachusetts DSS substantiating the allegations of sexual abuse, we are of the view that contempt sanctions were inappropriate for the mother's failure to deliver the child to the father. Accordingly, we substitute our discretion for that of the Family Court and reverse the judgment holding her in contempt and imposing a fine *(see, Matter of Lewin v Lewin,* 124 AD2d 730). Mollen, P. J., Rubin, Sullivan and Rosenblatt, JJ., concur.