THIRD DEPARTMENT, SEPTEMBER, 1990

(September 6, 1990)

■ In the Matter of GARY F. GITCHELL, Respondent, v LINDA F. GITCHELL, Appellant.—Mikoll, J. Appeal from an order of the Family Court of Broome County (Esworthy, J.), entered December 13, 1989, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for custody of Michael Gitchell.

The issue presented for review in this appeal is whether Family Court properly ordered a transfer of custody of the child from respondent to petitioner.

Respondent and petitioner were married on March 24, 1979. They have one child, Michael, born on February 7, 1981. Petitioner, an automobile mechanic, owns and operates a motor vehicle repair and service business. Respondent, a registered nurse, is a school nurse practitioner.

Petitioner left the marital home in September 1987. The parties mutually agreed that respondent would have custody of Michael and as to visitation. The child has resided with respondent since September 1987. Petitioner began living with his girlfriend and her two sons in January or February 1988. On May 10, 1988 Family Court issued a mutual order of protection. Custody was continued in respondent and visitation was formally awarded petitioner by order dated July 29, 1988. Another mutual order of protection was granted in August 1988 and a Law Guardian was appointed.

Family Court issued an order on September 27, 1988 which, among other things, directed that petitioner's visitation with Michael was not to occur "in the presence of any unrelated female" and that Michael was to be seen by a child psycholo-

gist, Dr. Gabriel D'Amato. The order was amended to require that there be no "affection between father and any unrelated female while in the presence of the child".

Petitioner commenced a proceeding pursuant to Family Court Act § 651 in February 1989 requesting custody of Michael because of a change in circumstances. The basis of the request was alleged to be respondent's emotional instability, violent assaultive behavior, vile and derogatory language, and interference with visitation rights.

On July 28, 1989 petitioner filed a violation petition, a show cause order and a family offense petition. Family Court issued an order providing visitation on July 31, 1989. Thereafter respondent requested modification seeking to allow Michael to change to the New Berlin School District in Chenango County about 30 miles away. Respondent had accepted a position as nurse practitioner in the New Berlin School District and planned to move from Broome County to the Town of Norwich, Chenango County. Petitioner responded by filing a show cause order and modification petition seeking temporary custody and to restrain respondent from enrolling Michael in the New Berlin School District. Family Court ordered visitation and allowed respondent to enroll Michael in the new school.

D'Amato and Patrick Raymond, the Law Guardian, submitted reports to Family Court. Raymond's report recommended a change of custody to petitioner and included a report from Kenneth O'Krent, a psychologist, recommending divorce therapy to defuse parental rage which was detrimental to the child. D'Amato indicated that Michael has a "high level of anxiety which has to be reduced. This anxiety is accentuated in relation to his father and the father's new family group." The report pointed out that the child had contempt for petitioner's girlfriend and continued hostility toward one of her sons, desired exclusive time with petitioner rather than time shared with petitioner and his new family and "declared his intense desire to live with his mother and to move to their new home in Norwich". D'Amato recommended reconstructive therapy for at least 18 months. He indicated that Michael would be "better off living with his mother while he undergoes psychotherapy as indicated and recommended". D'Amato further stated that "[e]ventually, in the course of his development, he may be able to and wish to live with his father. This should be an appropriate goal for early adolescence."

Family Court considered all the prior petitions of the parties and rendered a decision and order on December 13, 1989 which, *inter alia,* denied respondent's request to relocate and

change schools, concluding that her petition of August 31, 1989 was "after the fact", to the detriment of petitioner's visitation rights, without prior agreement and not in the best interest of the child. Family Court found that respondent had not demonstrated that exceptional circumstances exist which would warrant the curtailment of petitioner's rights of visitation. The court further concluded that joint custody was no longer possible in this case based on respondent's animosity and transferred physical custody of the child to petitioner.

In finding the move to Norwich detrimental to petitioner's visitation rights and to the best interest of the child, Family Court noted that Michael had to arise 30 minutes earlier to go to school in New Berlin. The court also made note of respondent's statement, made to the Law Guardian, that she would prefer that a child be placed in foster care rather than reside with the other parent. The court further concluded that respondent's failure to address the problem of communication between her and petitioner by insisting that all communication be in writing was not in the best interest of the child.

Respondent appealed and obtained an order from a Justice of this court staying enforcement of Family Court's order of transfer pending the appeal. The order of Family Court transferring custody of Michael to petitioner should be reversed and custody should remain with respondent. Family Court's decision lacks a substantial and sound basis in the record and was an abuse of discretion.

Initially we note that while the decision of Family Court failed to set forth specific findings of fact upon which the rights and liabilities of the parties depend (see, Clarke v Clarke, 101 AD2d 911, 912), the record is sufficiently complete to allow this court to make a custody determination in the best interest of the child (see, Guinan v Guinan, 102 AD2d 963).

Respondent's contention that Family Court's decision to change custody does not have a sound and rational basis in the record and is not in the best interest of the child is persuasive. In cases involving child custody disputes the court "must make every effort to determine 'what is for the best interest of the child, and what will best promote its welfare and happiness'. * * * [T]here are no absolutes in making these determinations; rather, there are policies designed not to bind the courts, but to guide them in determining what is in the best interests of the child." (Eschbach v Eschbach, 56 NY2d 167, 171 [citations omitted].)

A trial court's determination, rendered after a full evidentiary hearing, is entitled to great weight and should not be set aside where it is supported by the evidence *(see, Matter of Louise E. S. v W. Stephen S.,* 64 NY2d 946, 947; *Eschbach v Eschbach, supra,* at 173; *Matter of Coyne v Coyne,* 150 AD2d 573, 574). "However, '[a]n appellate court would be seriously remiss if, simply in deference to the finding of a Trial Judge, it allowed a custody determination to stand where it lacks a sound and substantial basis in the record' *(Matter of Gloria S. v Richard B.,* 80 AD2d 72, 76)" *(Skolnick v Skolnick,* 142 AD2d 570).

In the case at bar Family Court wrongly placed heavy emphasis on its finding that respondent's move from Broome County to Chenango County, a distance of 35 miles, about an hour's drive, would be detrimental to petitioner's visitation rights and to the child's best interest since the child would have to arise 30 minutes earlier for school. This finding is not supported by the evidence. The distance of 35 miles is not an unreasonable traveling distance *(see, Matter of Schouten v Schouten,* 155 AD2d 461, *lv denied* 74 NY2d 616 [5-to-6-hour drive]; *Blundell v Blundell,* 150 AD2d 321 [five-hour drive with parties to meet half way]; *see also, Matter of Garcia v Doan,* 132 AD2d 756, 757, *lv dismissed* 70 NY2d 796). No intent to frustrate petitioner's visitation rights is present as respondent had a legitimate change of employment which, on balance, considering fringe benefits, was more advantageous to her financially and to the child educationally *(see, Matter of Porter v Fryer,* 142 AD2d 770, 772). Further, respondent's planned move to Chenango County would reduce the morning travel time to school to about 12 minutes and thus not require the child to arise 30 minutes earlier.

As to the lack of communication between the parties, Family Court unduly placed the blame for this situation on respondent. We find that both parties were deficient in maintaining open lines of communication.

Family Court's decision indicates that the court overemphasized the import of respondent's statement to the Law Guardian that she would prefer that the child be placed in foster care rather than with his father. The surrounding circumstances demonstrate that this utterance was accompanied by her immediate reference to "the problems [which] exist at the father's residence". This referred to the child's hostility to petitioner's girlfriend and her two children, especially the oldest.

Family Court's emphasis on merely whether the proposed move would require the child to awaken 30 minutes earlier and respondent's failure to address problems by insisting on written communication is misplaced. Of greater significance is the effect of the custody change and proposed school change on the child. Family Court did not properly consider these several factors, all relevant to making a determination of the best interest of the child. Thus, its decision lacked a sound and substantial basis (see, Eschbach v Eschbach, supra, at 172; Friederwitzer v Friederwitzer, 55 NY2d 89, 93; see also, Matter of Wallinger v Wallinger, 96 AD2d 988, 989; McIntosh v McIntosh, 87 AD2d 968, 969; Matter of Saunders v Saunders, 60 AD2d 701). Factors to be considered include: "the care and affection shown; the stability of the respective parents; the atmosphere of the homes; the ability and availability of the parents; the morality of the parents; the prospective educational probabilities; the possible effect of custodial change on the children; the financial standing of the parents and the parents' past performance" (Matter of Saunders v Saunders, supra, at 701).

The record indicates that both parents were caring and affectionate parents but that the child's attitude toward visitation with petitioner changed for the worse when the visits were shared with petitioner's girlfriend and her two children. It is also significant to note that respondent's assaultive behavior and verbal abuse appeared to be confined to the period immediately after petitioner left the marital home through October 1988 and that respondent regretted such conduct. She testified that the incidents occurred two years before the trial and had not continued. We conclude that neither party was more fit to parent than the other.

There is evidence in the record that respondent would provide more direct care to the child due to her work and home schedule, which would coincide with the child's school schedule, as opposed to petitioner's work schedule and his commitment to his girlfriend and her two children. Respondent's part-time work hours were flexible and she could adjust them so that it would not deprive her of time with the child. There was no showing that either party could not financially provide for the child.

As to the quality of home life, it appears that respondent could provide a better life for the child. As previously noted, at the time of trial petitioner's home was shared with his girlfriend and her boys and had only two bedrooms. The child would have to share one bedroom with the two boys even

though he did not get along well with the older boy. However, respondent had more space at her home for him and would also have more time to spend with and care for him. We note too that the child indicated a preference to reside with his mother. The evidence also indicated that it would be to the child's educational advantage to remain in respondent's custody. The child's change to the New Berlin School District to repeat second grade resulted in his improvement. A change of custody to petitioner would take him from an improved educational arrangement back to the school where he had experienced failure and a confrontation with his peers who had advanced to the next grade. Or, if the custody change was not to his old school but to another, it would still be unsettling and require an adjustment on his part.

On the issue of the morality of the parents and its effect on custody, there is evidence that the new relationship of petitioner and his girlfriend was the cause of disruption and instability in the child's life. D'Amato's report gave evidence of that fact. The cohabitation of petitioner with his paramour was detrimental to the child's welfare and should have weighed heavily in Family Court's decision in this case, but did not (see, Matter of Gotham v Gotham, 102 AD2d 981, 982; see also, Pawelski v Buchholtz, 91 AD2d 1200; Matter of Bonnaci v Bonnaci, 89 AD2d 634).

"Where there is no indication that a change in custody will result in significantly enhancing a child's welfare, it is generally considered in his best interest not to disrupt his life" (see, Pawelski v Buchholtz, supra, at 1201). There is no showing that the requested change in custody would enhance the child's welfare. The decision of Family Court was deficient in this respect and unduly relied on the Law Guardian's recommendation to change custody.

Family Court's reliance on the report of the Law Guardian, which was based on a misstatement of the report of D'Amato regarding when a transfer of custody of the infant to petitioner should take place, was a further abuse of discretion.

Order reversed, on the law and the facts, without costs, and petition dismissed. Kane, J. P., Casey, Weiss, Mikoll and Yesawich, Jr., JJ., concur.