Diffin v Towne (2004 NY Slip Op 50465(U))

[*1]

Diffin v Towne

2004 NY Slip Op 50465(U)

Decided on May 21, 2004

Family Court, Montgomery County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 21, 2004

Family Court, Montgomery County
RICHARD DIFFIN, JR.,

 Petitioner, -against- 
TANYA TOWNE f/n/a TANYA DIFFEN, 

 Respondent. 
Docket No.: V-00560-04/04A

Philip V. Cortese, J.
The issues of custody and visitation were previously determined in the parties' Action for Divorce. The Judgment of Divorce was signed by the Hon. Guy P. Tomlinson, Acting Justice of the Supreme Court on April 3, 2000 and entered in the Office of the Clerk of the County of Montgomery, State of New York on April 4, 2000. The prior order awarded the parties joint legal custody, with the mother having primary physical custody. The father was awarded unlimited custodial time as the parties mutually and reasonably agree.
Petitioner, Richard Diffin, Jr., (hereinafter "father"), commenced this proceeding on April 30, 2004 by filing an Order to Show Cause and petition for modification of an order made by another court for support, custody and visitation. In his petition the father is seeking physical custody of the parties' minor child and a modification of the current support order which requires him to pay support to the mother. The father's petition alleges upon information and belief that the mother is in the Army National Guard and is to be deployed on active duty for one or two years and will be unable to personally care for the child on a day to day basis.
Respondent, Tanya Towne f/n/a Tanya Diffen, (hereinafter "mother"), was served with the Order to Show Cause and petition on April 30, 2004. The first appearance was held on May 7, 2004 at which time the mother advised the Court that she was retaining the services of Anthony Casale, Esq., and was meeting with him on May 10, 2004. She also advised that she was leaving for Fort Drum, New York on May 24, 2004. She admitted that she is in the National Guard and has received orders directing her that she will be on active duty commencing May 24, 2004. The matter was scheduled for trial on May 21, 2004.
At the conference on May 7, 2004 the mother advised that she is required to make a plan for her child during her active duty. She stated that she has executed guardianship papers allowing for her current husband and her mother to care for the child. Her plans did not include [*2]the joint legal custodian and natural father of the subject child.
Attorney Casale filed an Order to Show Cause on May 14, 2004 seeking (1) a stay of prosecution of this matter pursuant to Military Law sections 304 and 307, (2) a dismissal of the petition due to the petitioner's failure to verify it, or (3) an adjournment of the trial for a sufficient period of time to conduct discovery and prepare for trial. On May 14, 2004, the same day Attorney Casale filed his Order to Show Cause, the mother and her current husband, Jason Towne, filed a petition in which Jason Towne is seeking temporary custody of the subject child while the mother is on active duty in the National Guard.
The oral arguments on the Order to Show Cause were heard on May 19, 2004. The father appeared by and through his attorney, Frederick A. Partyka, II, Esq., the mother appeared by and through her attorney, Anthony Casale, Esq., and the Law Guardian, Joseph Nalli, Esq. appeared on behalf of the subject child.
Attorney Casale argued that the mother is unavailable to appear in Court for an unspecified time, which pursuant to her orders could be as much as eighteen months. He argued that she is entitled to a stay, and that the entry of a stay bars this Court from proceeding with any temporary or permanent relief. Attorney Casale argued that at the conclusion of the father's regularly scheduled visitation over the summer of 2004, the child is to be returned to the State of New York to live with the step-father, since presumably the mother will not be available to be the primary physical custodian. Attorney Casale's argument was that the child's continued education in the Fort Plain School District was a more important stabilizing factor in the child's life than residing with an available natural parent.
Attorney Partyka argued that the mother is not entitled to a stay of the proceedings since she created the time constraints in this matter by not advising the father of her military orders until late April, 2004. He also argued that the Court is not only able to fashion a temporary order during the pendency of any stay, but must do so in order to protect the rights of the father and the child. He further argued that not granting temporary relief would in effect allow a step-father to have greater rights than a natural parent to his child, in contravention of Bennett v Jeffreys, (40 N.Y.2d 543). He argued that the Military Law is only meant to act as a shield and not a sword with which the mother could potentially strip the father of his joint custodial rights to the subject child.
The Law Guardian reported to the Court that he had spoken with the subject child and the mother, separately, two days before the oral arguments. He advised that the child has a good relationship with his father and showed no concerns regarding visiting with his father during the summer. Attorney Nalli also countered that the father had no obligation to return a child at the conclusion of his regularly scheduled summer visitation to a non-custodial relative or person. He stated that the only person to whom the child must be returned is the physical custodian, who in this case is the mother. He argued that he is unaware of any legal right of a physical custodian to delegate his or her custodial rights to another person in derogation of the rights of a natural parent who enjoys joint legal custody by agreement of the parties.
Joint legal custody is recognized in the State of New York and is based upon the premise that neither parent has a prima facie right to custody of his or her children (Braiman v Braiman, 44 NY2d 584, 589; see also Dom. Rel. Law § 240). Joint custodial arrangements award the "responsibility for and control of a child's upbringing" to both parents (Braiman, 44 NY2d at [*3]589). Such an arrangement requires both parents to jointly come to decisions regarding matters affecting the care, education, moral upbringing or religion, medical treatment and general welfare of the child. Neither parent on his or her own can make a life altering decision without consulting with the other parent and coming to a mutual decision (Braiman, 44 NY2d at 589; see also Matter of Meres v Botsch, 260 AD2d 757; Matter of Benton v Houghtling, 193 AD2d 894; Matter of Hiser v Hiser, 175 AD2d 353). In cases where a mutual decision cannot be reached and a parent files a petition the court has three options. "First, the court may grant sole custody to one parent with reasonable visitation rights to the other. Secondly, the court may decide the [ ] issue on behalf of the parents. Thirdly, the court may give the decision-making power on this issue to one parent" (Hight v McKinney, 164 Misc2d 983, 984).
Military Law sections 304 and 307 allow for a person who is in the military and on active duty to apply for a stay of any action or proceeding in any court (Military Law §§ 304 & 307). The party to the proceeding must make an application to the court requesting a stay outlining the reasons for their request (Military Law § 304). It is within the Court's discretion to determine whether the proffered reasons for the requested stay support a finding that the party's ability to prosecute or defend the action or proceeding is materially affected by his or her military service (Military Law § 304).
The Military Law only requires a stay if the litigant's military service is materially affecting his or her ability to proceed in the matter (Military Law § 304; Warshawsky v Warshawsky, 215 AD2d 374; Matter of Theresa G. v Eric L., 133 Misc2d 414; Kelley v Kelley, 38 NYS2d 344). A litigant's military service may or may not be deemed to affect their ability to proceed even if he or she is on active duty and stationed at a base in a foreign country (Matter of Theresa G., 133 Misc2d at 417.) Depending upon whether the soldier has available leave time, and the option of using the said leave time, the Court may find that the litigant's military service is not materially affecting his or her ability to proceed (id.). The Military Law is simply a shield available to service men and women, not a sword with which to impair the rights of others or to receive affirmative relief (Short v Rapping, 135 AD2d 624, 624; Matter of Theresa G., 133 Misc2d at 418).
Even in instances where a stay is granted, the Courts have the power to award temporary relief to the non-moving party (Gilmore v Gilmore, 185 Misc2d 535, 536 (staying the proceedings until termination of defendant's military service but awarding alimony and counsel fees in the interim); Kelley, 38 NYS2d at 348-50 (holding that the legal and moral obligation to support an infant child outweighed the protections provided in the Soldiers' and Sailors' Civil Relief Act requiring the court to deny the motion to stay the proceeding prior to being able to determine the income of the defendant and his ability to pay support); see also Clarke v Clarke, 25 NYS2d 64, 64-65 ("Notwithstanding his military service, some provision for defendant's wife and children must be made.")). Justice Searl's opinion in Kelley v Kelley is instructive with regard to when a Court must weigh the rights of a service man or woman to obtain a stay of a proceeding against the rights of a child or spouse for support:

As to whether an order should be made at this time requiring the defendant to make payments for the support of the children as agreed, the Court believes that some evidence should be introduced to permit the Court to form an 'opinion', as to [*4]whether the defendant is able to comply with such an order, as required by Title 50 U.S.C.A. Appendix § 523 of the Act. There is no evidence before the Court at this time as to the amount of pay of a first lieutenant in the army. Although the complaint alleges that defendant is the owner of property in the State of New York of the value of $5,000 and upwards, there is no proof of the nature, character or extent of such property.
This Court is not unmindful of the sacrifice and patriotic devotion of thousands of members of the medical profession who are following our flag on this and other continents in an all-out effort to preserve not only life but our form of living as well. Since an army man has his national obligations and, likewise, obligations to support his children, the courts are called upon to exercise a sound discretion. Clarly [sic], it would be unjust to suspend provision for food and clothing for children six and eight years of age for the duration of the war if the father, receiving his own subsistence from the government, has the means so to provide.
Moved, as we all are with a duty and desire to contribute to the well-being and morale of those in the armed forces, there is a point beyond which moral obligations at home cannot be entirely overlooked. The statute was neither intended as a means of abuse nor to apply without restriction.
Although in McGlynn v. McGlynn, 178 Misc. 530, 35 N.Y.S.2d 6, the defendant in military service sought to be relieved from paying alimony to his wife during his service, and the Court remarked that, 'At all hazards every inhibition must be deferred so that he is physically, mentally and spiritually free to devote himself to the greatest task ever to confront him and his country', still, in that case the wife, we must assume, was able to earn her own livelihood. The sentiment expressed must be approved by every public spirited citizen, but in the instant case natural laws still dictate that small children be fed.
(Kelley, 38 NYS2d at 349-50).
Verification of pleadings is controlled by Civil Practice Law and Rules section 3020. This section provides in pertinent part that "if a party . . . is not in the county where the attorney has his office, . . . the verification may be made by such . . . attorney (CPLR § 3020 (d) (3))."
In cases where a non-parent is being considered to take custody of a child in contravention of the rights of a natural parent, the Court must first determine whether extraordinary circumstances, pursuant to Bennett v Jeffreys, exist to allow a non-parent to [*5]challenge the right of the natural parent to custody of his or her child (Bennett v Jeffreys, 40 N.Y.2d 543). If in fact extraordinary circumstances exist, the Court will then proceed to the analysis of the best interest of the child to determine custody on that ground (id.). If extraordinary circumstances do not exist, the Court will necessarily have to grant custody to the natural parent as "intervention by the State in the right and responsibility of a natural parent to custody of her or his child is warranted if there is first a judicial finding of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child" (id. at 549). "So long as the parental rights have not been forfeited by gross misconduct or other behavior evincing utter indifference or irresponsibility the natural parent may not be supplanted. Indeed, even where such 'forfeiture' or 'extraordinary circumstances' are found to exist, the best interests of the child must still thereafter be determined before the natural parent may be displaced" (Matter of the Adoption of Male Infant L., 61 NY2d 420, 427 (citations omitted)). Socioeconomic factors, that do not rise to the level of neglect or unfitness, are not relevant or permissible factors to be considered by the Court in determining whether extraordinary circumstances exist in a given case (Id. at 430).
The burden of establishing whether extraordinary circumstances exist in a particular matter is on the non-parent (Matter of Dungee v. Simmons, 307 AD2d 312, 313). The proof may consist of the non-hearsay statements of a parent, or other admissible evidence regarding the parents, and even the testimony of the parent (Matter of John KK. v Gerri KK., 302 AD2d 811, 813). The presumption that a natural parent is the appropriate custodian may be rebutted by any or all of the evidence introduced at trial (Matter of John KK., 302 AD2d at 813; Matter of Jordan v. Cumberbatch, 237 AD2d 522, 522).
In determining what is in the best interest of the child, a court must review the totality of the situation (Eschbach v Eschbach, 56 NY2d 167; Friederwitzer v Friederwitzer, 55 NY2d 89; Matter of Sheavlier v Melendez, 296 AD2d 622; Matter of Hanson v Hanson, 283 AD2d 677; Matter of Chant, 277 AD2d 741; Matter of Millett, 270 AD2d 520; Matter of Thompson, 267 AD2d 516; Matter of Belden v Keyser, 206 AD2d 610; Matter of Fialkowski v Gilroy, 200 AD2d 668; Matter of McCauliffe v Peace, 176 AD2d 382; Matter of Patsy M.C., 165 AD2d 813). The various concerns that must be weighed in deciding what is in the best interest of the child consist of whether an agreement exists between the parties or whether a plenary trial on the issue of custody was previously had, the quality of the home environment, the parental guidance the custodial parent provides, financial status and ability to provide for the child, ability of the parent to provide for the child's emotional and intellectual development, if the child has a preference, the presence of siblings, and the length of time the current custody has continued (Eschbach, 56 NY2d 167; Friederwitzer, 55 NY2d 89; Nehra v Uhlar, 43 NY2d 242; In the Matter of Sheavlier, 296 AD2d 622; In the Matter of Hanson, 283 AD2d 677; In the Matter of Chant, 277 AD2d 741; In the Matter of Millett, 270 AD2d 520; In the Matter of Thompson, 267 AD2d 516; In the Matter of Belden, 206 AD2d 610; In the Matter of Fialkowski, 200 AD2d 668; In the Matter of McCauliffe, 176 AD2d 382; In the Matter of Patsy M.C., 165 AD2d 813). This list is illustrative only, not exhaustive. If after the analysis of all the factors is concluded the court determines "'there is no indication that a change in custody will result in significantly enhancing a child's welfare, it is generally considered in his best interest not to disrupt his life'" (Gitchell v [*6]Gitchell, 165 AD2d 890 (quoting Pawelski v Buchholtz, 91 AD2d 1200, 1201)).
In this case the mother alleges that this Court is attempting to circumvent her rights pursuant to the Military Law sections 304 and 307 by scheduling a trial fourteen days after the first appearance. She further argues that it is unusual to simply schedule a trial without further appearances after the initial appearance on a custody matter. The practice of this Court, however, is to have the parties appear for an initial appearance with or without counsel, advise the parties of their rights, and schedule the matter directly to trial without a pre-trial conference. The Court will provide the parties with a scheduling order if requested, and will schedule a pre-trial conference for good cause shown. Good cause includes, but is not limited to, reviewing the results of any forensic exams, or resolving discovery disputes. Settlement conferences, however, are generally not scheduled before the Court and are instead presumed to be held at counsel's office prior to the trial date. In this particular matter, the mother advised that she was retaining counsel on May 10, 2004 and that she was scheduled to report to Fort Drum on Monday, May 24, 2004. In order to allow the mother assistance of counsel, and to ensure her availability, the matter was scheduled for trial on May 21, 2004. It was not done to circumvent her rights. A request to adjourn the trial would be deemed reasonable since the trial was scheduled rather quickly.
Despite the mother's statements at the initial appearance that she is required by the United States Army to make a plan for her minor child before reporting to duty, her attorney claimed to have no knowledge of any such requirement or plan. Instead, her attorney argued that the Court should stay this matter for an unspecified period of time, and that all parties to the proceeding should simply continue as though the mother were available to be the primary physical custodian. This fictional assumption would allow the father his regularly scheduled visitation over the summer, but would require him to return the child on August 31, 2004 to the step-father. This fictional assumption ignores the fact that the step-father has no legal or moral obligation to support the child, has no legal ability to obtain medical care for the child, and no legal ability to inquire as to the education of the child. Attorney Casale argues that this Court, and the joint legal custodian father, should create a de facto custodial arrangement between the step-father and the subject child while the mother is on active duty and unavailable to be the physical custodian of the subject child. The mother's "plan", as proposed by her attorney, would be in derogation of the father's parental and custodial rights, and hardly in the best interest of the child. The fact that the mother will be unavailable to be the physical custodian is clearly a matter which will affect the child's life in a significant manner. The important question of who will be the physical custodian of the child in the mother's absence is clearly a matter that must be jointly decided by the natural parents or determined by the Court if the parties are unable to agree. In the instant case the natural parents, who are joint custodians of the child, manifestly do not agree on primary physical possession of their son during the mother's deployment.
Furthermore, the mother's argument that Bennett v Jeffreys is not applicable to this matter is incorrect if she intends to argue that a non-parent is more suitable than the natural father to be the de facto physical custodian of this child while she is away on active duty. Based upon the record before the Court today, extraordinary circumstances do not exist. The parties entered into a stipulation and agreement on December 29, 1997 in which they agreed to joint legal custody. This agreement was later turned into a conversion divorce and the Judgment of Divorce awarded [*7]joint legal custody to the parents with primary physical custody to the mother. The father was awarded visitation as outlined in the separation agreement. The arguments today revealed that the father has exercised unsupervised visitation with the child for the entire summer, every year since 1997, in the State of Virginia where he resides, that he enjoys a close, loving relationship with his son, and that he has had such other and further unhampered contact with the child since the parties entered into the separation agreement. The parties have not petitioned to modify the custody and visitation provisions of their divorce prior to this application and they have apparently been able to work in a civilized, amicable manner with regard to all decisions affecting the child's life up to this point. The child was two years old when the parties separated and for the last seven years the parents have not had any issues requiring the assistance of the Court. The mother's arguments that she needs time to conduct discovery are reasonable. However, there is no basis on the record currently before the Court to allow a non-parent, in derogation of a natural parent's rights, to care for the child pending the trial in this matter. The fact that the mother will be unavailable as a physical custodian for her son due to her military service is not an extraordinary circumstance with regard to the father's ability to be the physical custodian of his son.
Furthermore, this Court has the ability to enter a temporary order pending the final resolution of this matter whether or not it grants a stay to the mother pursuant to Military Law section 304. In extending the logic outlined in Gilmore v Gilmore and Kelley v Kelley it is evident to this Court that children of military personnel are not only entitled to receive support during their parent's tours of duty, but that they are also entitled to stability with regard to their care, upbringing and custody (Gilmore, 185 Misc2d at 536; Kelley, 38 NYS2d at 348-350). Gilmore v Gilmore and Kelley v Kelley only dealt with issues of support as the children in those cases were residing with a natural parent. In this case, the Court is being asked to leave the child with a step-parent until such time as the mother is able to proceed. This is not in the child's best interest and the law requires this Court to enter a temporary order pending the trial of this action. To fail to provide for the child's legal physical custody during the pendency of the stay would result in an untenable situation where the child would be living with his step-father, a legal stranger to him, and his natural father's rights would be subrogated to the step-father. The Court agrees with the father, that the child should be allowed to complete the current school year in New York and then physical custody should be transferred to the father, the available natural parent, until such time that the mother is no longer on active duty in the military or a trial is held on this matter.
The mother's argument that the father's application for support is premature must also be rejected. The father is entitled to file simultaneous actions to bring all issues before the Court. If he fails to succeed on the custody petition, and custody is transferred to the another party, support will still need to be modified to direct the payments to the correct physical custodian. Moreover, during the pendency of the stay, while the father has physical custody, his obligation to pay child support to the mother must be held in abeyance. The Court, therefore, will not dismiss the father's support petition.
With regard to the argument that the father's petition is defective due to the petitioner failing to personally verify it, the Court finds that the father is not living in Montgomery County, New York and that the provisions of CPLR section 3020 (d) (3) apply to this matter. As such, [*8]the attorney's verification is sufficient and the petition will not be dismissed.
The Court shall stay, and hereby does stay, the proceedings until such time that Attorney Casale or the mother notifies this Court that she is available to proceed. During the pendency of the stay, the Court shall enter a temporary and superceding order of custody, visitation and support.
Therefore, it is hereby,
ORDERED that the father, Richard S. Diffin, Jr., and the mother, Tanya L. Towne, shall have joint legal custody of the subject child; and it is further
ORDERED that the mother, Tanya L. Towne, shall have primary physical custody of the subject child until midnight on June 25, 2004; and it is further
ORDERED that the father, Richard S. Diffin, Jr., shall have primary physical custody of the subject child as of June 26, 2004 pending further order of this court; and it is further
ORDERED that commencing with the 2004-2005 school year, the father, Richard S. Diffin, Jr., shall have the legal authority to enroll the child in the school district of his choice pending further order of this court; and it is further
ORDERED that the mother, Tanya L. Towne, shall be awarded open and liberal parenting time with the subject child as the parties may mutually and reasonably agree; and it is further
ORDERED that at all times, the child shall be accessible by telephone to the parent not having physical custody of the child and each parent shall have reasonable telephone access to the child during such times; and it is further
ORDERED that each parent shall exert reasonable efforts to maintain access to and unhampered contact with the child by the other parent and to foster a feeling of affection between the child and the other parent and the other parent's family; neither parent shall do anything which may estrange the child from the other parent nor which may hamper the free and natural development of love and respect by the child for the other parent; and it is further
ORDERED that the attached Children's Bill of Rights shall be incorporated herein by reference and made a part hereof; and it is further
ORDERED that the Judgment of Divorce signed on April 3, 2000 and entered on April 4, 2000 requiring the father to pay child support to the mother shall be modified herein as follows, the father's obligation to pay child support shall be suspended effective June 26, 2004; and it is further
ORDERED that this matter shall be stayed pending notification from Anthony Casale, Esq. or Tanya L. Towne, that she is no longer unavailable to the Court pursuant to Military Law section 304; and it is further
ORDERED that the Family Court located in the County of Montgomery, State of New York shall retain exclusive and continuing jurisdiction over the issues of custody, visitation and support; and it is further
ORDERED that this Decision and Temporary Order shall supercede all prior orders of custody, visitation and support; and it is further
ORDERED that as herein modified the Judgment of Divorce signed on April 3, 2000 and entered on April 4, 2000 shall remain in full force and effect.
Based on the foregoing, petitioner's relief is granted in part and denied in part. This [*9]Decision and Order shall constitute the order of the Court.