◼ THOMAS C. SHED, Appellant, v TERRY L. SOFIA, Formerly Known as TERRY L. SHED, Respondent.—Order affirmed without costs for reasons stated in decision at Supreme Court, Fallon, J.

All concur, except Pine and Balio, JJ., who dissent and vote to reverse and grant the petition, in accordance with the following memorandum.

Pine and Balio, JJ. (dissenting). We must dissent, as we disagree with the majority that respondent has met her burden of proving exceptional circumstances or pressing concerns for the welfare of her children or herself warranting her relocation to California and the consequent interruption of frequent visitation between the children and their father (see, Barie v Faulkner, 115 AD2d 1003).

As in all such cases, close examination of the facts is required. The parties met in college and were married in 1976. The mother graduated from college; the father did not. Two children were born of the marriage; Thomas, born November 3, 1978 and Samantha, born April 29, 1982. The family had lived in Rochester for one year before the parents finally separated in July 1982, when Samantha was about two months old. (There had been a separation of 3 or 4 days duration when the mother was seven months pregnant with Samantha and the father said he needed to be free.) Both times the mother went with the children to Buffalo, where her parents then lived.

The parties entered into a property settlement and support agreement which provided that "The Wife shall remain a resident of and domiciled within the State of New York, unless a change of residence or domicile is necessitated by adequate and sound reasons or significant concerns, such as economic or health related reasons." Pursuant to this agreement the father had visitation with the children for two weeks every summer, once a month from 6:00 P.M. on Friday until 6:00 P.M. on Sunday, three full days from 10:00 A.M. to 9:00 P.M. monthly, and alternating legal holidays and birthdays. At the time of this proceeding the father still lived in the Rochester area, some 75 miles from the residence of the mother, and visitation actually occurred twice a month, usually from Saturday morning at 10:00 A.M. to Sunday evening at 7:00 P.M. a day and a half at a time. He never exercised his

two-week summer visitation right. The father always drove to Buffalo to visit the children; the mother never provided transportation.

The father pays $50 per week, per child, for support and has missed only one payment in five years, when he was between jobs. He also pays half the children's medical expenses.

Both parties have remarried, the mother in March 1984. At that time she was a nurse and her new husband (hereafter, the husband) was an intern. At the time of the hearing he was a resident in orthopedic surgery scheduled to complete his training in June 1987. Visitation continued uninterrupted after the remarriage. Sometime before the husband completed his training, the mother's aunt told them about job opportunities in California. In July 1986 the husband accepted a position there for the following year; they bought a house there in February 1987.

In February 1987, before the house was purchased, the father by order to show cause sought an order restraining the mother from moving the children from western New York or, in the alternative, awarding him custody. He had remarried in November 1986.

Justice Fallon conducted a hearing and found that the husband had never interviewed or formally applied for any local positions in orthopedics to follow his residency and that he made no efforts of any sort to secure a position locally after accepting the California offer in 1986. The court found that husband's schedule in California will be very favorable and that he will earn $10,000 per month plus bonuses to start and will be eligible to earn over $400,000 in eight years. The court found that the husband had indebtedness of about $60,000 for his education and that an income in the neighborhood of $150,000 after seven years of practice in the Buffalo area was plausible.

The court found that the mother and her husband appear ideally suited as spouses and parents. It concluded that any loss to the children from the reduced contact with their father would be short lived because the new home, the school system and the general community in which the mother and her husband intend to make their home all offer a life-style equal to or better than that available in either Rochester or Buffalo.

The court found that husband had not just an opportunity but a lucrative contract of employment in California. It distinguished *Daghir v Daghir* (56 NY2d 938) on the ground that the noncustodial parent there had taken full advantage of the

visitation rights granted to him, and relocation of the custodial parent to France with her new husband and the children was not required by any compelling factor.

The court discussed the circumstances of the father and his new wife, who are both employed. The father works for an engineering firm and earns about $25,000 per year. His wife is a computer programmer earning about $28,000 and attends college part time. His wife testified that she would terminate her employment and schooling to care for the children if the father were awarded custody. A change in housing would be needed to accommodate the children. The court concluded that the father's plan was financially unrealistic and would adversely affect the children's standard of living.

The court found that the children have good relationships with both parents and the new spouses of each. It found that the father's utilization of visiting rights was reasonable but "not such as to suggest any overwhelming desire to be with his children at every available opportunity." In particular, the court found that the father's failure to utilize summer vacation visitation despite the fact that he took vacations himself "tends to indicate some lack of parental fervor on his part."

The court concluded that the mother had met her burden of demonstrating the requisite exceptional circumstances to justify continuing custody and relocation to California, and that this would be in the emotional best interests of the children. The court conditioned permission to move on the mother returning the children to western New York at her expense three times a year: two weeks in the summer, one week at Christmas, and one week at spring break.

We conclude that the court erred in finding that the mother met her burden of showing exceptional circumstances. She showed that her new husband could provide an affluent lifestyle in California, but there was no evidence of any other attempts to find employment in western New York or in any location more accessible than California. The court placed heavy emphasis on the fact that the father did not use all available visitation, even though the entire transportation burden fell on him and it was initially the mother who moved the children some 75 miles away.

"Generally, in cases of this nature, a geographic relocation that effectively deprives a noncustodial parent of access to a child will not be allowed absent exceptional or compelling circumstances (see, Weiss v Weiss, 52 NY2d 170; Matter of Dervay v Dervay, 111 AD2d 462, 463; Matter of Yeo v Cornaire,

91 AD2d 1153, 1154, *affd* 59 NY2d 875). The overriding concern is with the best interests of the children, which are clearly nurtured by a continued relationship with a noncustodial parent who has maintained reasonable visitation *(id., see, Daghir v Daghir,* 82 AD2d 191, 193-194, *affd* 56 NY2d 938). No single factor is determinative in these cases, which must necessarily be resolved on their own particular facts" *(Matter of Ferguson v Ressico,* 125 AD2d 915, 915-916; *see also, Matter of Stroh v Hubbard,* 133 AD2d 489). In view of petitioner's reasonable exercise of his visitation rights, the interests of the children in not being as far away from their natural father as California, and respondent's failure to prove that the move is economically *necessary,* we conclude that the court erred in denying the petition. As in *Morgano v Morgano* (119 AD2d 734, 737), the sole purpose for the move is a substantial increase in salary; there the court wrote: "While it is undoubtedly true that the plaintiff's economic situation was greatly improved by her move, there is no evidence of economic necessity (i.e., that she was or would be unable to live on the salary she had been earning in New York). While economic betterment is a factor which should be considered, it must be balanced against the best interests of the child and the rights of the noncustodial parent." In our view, the trial court wrongly determined that a large salary and the life-style that accompanies it are of more value to the children than bi-monthly weekends with the father and an adequate standard of living in western New York.

We would accordingly hold that effective 60 days from the order of this court, custody of the children is transferred to petitioner unless before that time respondent shall change her residence and that of the children to a location where the prescribed visitation may be conveniently carried out. In the event she declined to so change her residence, she could apply to Supreme Court for an order fixing her visitation privileges. (Appeal from order of Supreme Court, Erie County, Fallon, J. —custody.) Present—Dillon, P. J., Callahan, Green, Pine and Balio, JJ.