■ JOHN BLUNDELL, Respondent, v GEORGINNE I. BLUNDELL, Appellant.—In an action for a divorce and ancillary relief, the defendant wife appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Nassau County (Brucia, J.), dated June 2, 1987, as, after a nonjury trial, conditioned the award of custody to her of the parties' two children upon her remaining within a 30-mile radius of the parties' former marital home.

Ordered that the judgment is reversed insofar as appealed from, on the facts and in the exercise of discretion, with costs, the following words from the first decretal paragraph thereof are deleted: "conditioned on her remaining within a 30-mile radius of the former marital residence, to wit: 63 Maxwell Road, Garden City, New York", and the matter is remitted to the Supreme Court, Nassau County, for a determination as to whether any modification of the visitation provisions of the judgment are warranted in light of this determination.

The parties were married in May 1974 and have two children, Thomas, born on November 13, 1979, and Suzanne, born on April 26, 1983. Shortly after Suzanne was born, the plain-

tiff husband moved out of the marital home in Garden City, New York, and since 1984 has resided nearby with a woman and her two children in Floral Park, New York. An action for divorce was instituted in July 1985 and a trial was held in August 1986. On the issue of custody of the parties' two children, the plaintiff testified that he would agree to permit the defendant to retain custody subject to his liberal visitation, provided that the defendant not be permitted to move to New Hampshire as she proposed. At the trial, the defendant expressed her desire to relocate to Londonderry, New Hampshire, where her parents and family resided. The defendant, however, recognizing the plaintiff to be a caring parent, did not oppose the granting of visitation to the plaintiff on alternate weekends, during school recesses and during the summer months. Following the trial, the Supreme Court, *inter alia,* awarded a divorce to the defendant on the ground of abandonment and awarded custody to the defendant on the condition that she remain within a 30-mile radius of the former marital home. The court also determined that the plaintiff was entitled to liberal visitation rights. On appeal, the defendant contends that the Supreme Court improperly conditioned her award of custody of the parties' children upon her remaining within a 30-mile radius of the former marital residence.

Any custody determination depends to a very great extent upon the court's assessment of the credibility of the witnesses and of the character and temperament of the parents, and, therefore, the findings of the trial court are generally accorded the greatest respect *(Eschbach v Eschbach,* 56 NY2d 167; *Matter of Robert T. F. v Rosemary F.,* 148 AD2d 449). However, the Appellate Division's authority in matters of custody is as broad as that of the trial court *(see, Matter of Louise E. S. v W. Stephen S.,* 64 NY2d 946; *Matter of Robert T. F. v Rosemary F., supra).* Notwithstanding the deference to be accorded to the findings of the trial court, under the circumstances of this particular case, the Supreme Court's determination was not supported by the evidence.

At the trial, the defendant explained that her decision to relocate to Londonderry, New Hampshire, where she owned a townhouse, was motivated by a desire to be closer to her parents and brother with whom she shares a good relationship. The defendant has no immediate relatives in the Long Island area. The defendant explained that she expected that her parents would assist her in the rearing of her two children and would provide emotional support as well as free baby-sitting services while she worked. In the defendant's

opinion, the move would be in the best interest of the children and would lower the cost of her living expenses. The defendant indicated that while she was not currently employed in New York, she planned to find full-time employment as a secretary in New Hampshire. Moreover, she considered the plaintiff to be a fit parent and, as previously noted, she did not oppose the granting of liberal visitation to him on alternate weekends, as well as during school recesses and the summer months. The defendant explained that the drive from Long Island to New Hampshire is approximately five hours but that she was willing to meet the plaintiff with the children at a midway point when he visited the children. The defendant also explained that Londonderry, New Hampshire, is approximately 30 to 40 miles away from Logan Airport and that the one-way airfare between Logan and LaGuardia Airports is $35 per child and $50 per adult.

The plaintiff's father, who currently resides across the street from the defendant and his two grandchildren, testified on the defendant's behalf, and stated that, in his opinion, the defendant should be allowed to move to New Hampshire. He believed that the move would be in the children's best interest. He also testified that he and his wife planned to visit the defendant and their grandchildren in New Hampshire if the defendant and the children are permitted to move.

The plaintiff testified that since he left the marital home, he has remained in constant contact with his children and currently maintains a good relationship with both of them. The plaintiff feared that if the defendant moved to New Hampshire, he would be unable to maintain weekly visits with the children and that his scheduled visitation periods would be less than ideal since he and the children would be tired from traveling. To support his position, the plaintiff also provided the testimony of a child psychiatrist who testified that, in his opinion, the defendant's desire to move to New Hampshire was a reaction to the plaintiff's infidelity during the parties' marriage. The expert also opined that if the defendant were permitted to move, it would have a deleterious effect on the plaintiff's relationship with his children.

"It is the general policy of this State that a move by the custodial parent to a distant domicile will not be permitted when it would effectively deprive the noncustodial parent of regular access to the child of the marriage" (*Schwartz v Schwartz,* 91 AD2d 628, 629; *see also, Kozak v Kozak,* 111 AD2d 842, 843, *appeal dismissed* 66 NY2d 913; *Daghir v Daghir,* 82 AD2d 191, *affd* 56 NY2d 938). The predominant

concern is the children's best interests *(Daghir v Daghir, supra)*, although the resolution of such disputes also "entails a careful balancing of both the rights and problems of the child and his (or her) parents" *(Schwartz v Schwartz, supra, at 629; see also, Kozak v Kozak, supra, at 843)*. "The courts approach matters of this nature on a case-by-case basis" *(Schwartz v Schwartz, supra, at 629; see, Zaleski v Zaleski, 128 AD2d 865, lv denied 70 NY2d 603)*.

Unlike the numerous cases relied upon by the plaintiff in which the custodial parent was denied permission to move to a distant locale because of the damaging effects such a move would have on the visitation rights of the noncustodial parent, in this case, the defendant is intending to move to a location which is within a reasonable distance of the plaintiff's current residence. Thus, the defendant's relocation would not effectively curtail the visitation rights of the plaintiff or deprive him of regular access to the children *(see, Zaleski v Zaleski, supra* [custodial parent's move from Long Island to Syracuse was permitted]; *cf., Daghir v Daghir, supra; Kozak v Kozak, supra)*. Significantly, the defendant has expressed a desire to promote continued visitation by the plaintiff and has proposed a rather liberal schedule which would provide visitation on alternate weekends, during school recesses and during the summer months. Moreover, the defendant has volunteered to drive the children to a midway point between New York and New Hampshire in order to promote the plaintiff's visitation. Thus, the defendant's proposed visitation schedule would insure the plaintiff regular and meaningful access to the children *(see, Zaleski v Zaleski, supra)*.

Moreover, the record clearly indicates that the defendant's desire to relocate to New Hampshire was not intended to inhibit the plaintiff's reasonable access to the children but was an attempt to seek a better living environment, economic and otherwise, for her children, as well as herself. This factor coupled with the fact that the plaintiff will be permitted to maintain reasonable access to his children leads us to conclude that, upon a balancing of the equities of this case, the defendant should be permitted to move to New Hampshire subject to liberal visitation by the plaintiff. Mollen, P. J., Eiber, Sullivan and Harwood, JJ., concur.