■ ANTOINETTE CONIGLIO, Appellant, v PHILIP CONIGLIO, Respondent.—In a matrimonial action in which the parties were divorced by judgment dated February 15, 1989, which incorporated but did not merge provisions of a stipulation entered into by the parties in open court, the plaintiff wife appeals from an order of the Supreme Court, Queens County (Lonschein, J.), dated May 9, 1989, which granted the defendant husband's motion to enforce the terms of the stipulation and divorce judgment and denied her cross motion to modify the terms of the divorce judgment to (1) permit her to relocate to Florida with the parties' child, (2) alter the terms and conditions of the visitation schedule, and (3) award additional child support.

Ordered that the order is affirmed, without costs or disbursements.

The parties were married in July 1977. Their only child, Philip, Jr., was born on February 4, 1981. Sometime in 1983, the plaintiff moved out of the marital residence. In 1987, she commenced an action for divorce. The defendant appeared and the matter was placed on the trial calendar. Prior to the date of trial, the parties agreed that the plaintiff should retain custody of Philip, Jr., and a rather complex visitation schedule providing for supervised and eventual unsupervised visits was agreed upon and stipulated to in open court. As a result of this stipulation entered into on October 24, 1988, which also provided that the plaintiff would not move a distance of more than 50 miles from her present address without the defendant's prior written consent, the defendant withdrew his answer and the plaintiff obtained a judgment of divorce on the ground sought.

Shortly thereafter, in February 1989, which marked the beginning of the second phase of the visitation plan allowing for supervised visits away from the custodial residence, the

plaintiff refused to provide the defendant access to his son, claiming that he had violated the terms of the stipulation by failing to remain drug and alcohol free. The plaintiff refused to comply with the visitation schedule until the defendant underwent a psychiatric and physical examination. The defendant then moved the Supreme Court to enforce the terms of the stipulation which were incorporated but not merged into the judgment of divorce. The plaintiff cross-moved to modify the judgment of divorce to (1) permit her to relocate with Philip, Jr., to Florida, (2) to modify the visitation schedule, and (3) to increase the amount of child support she was to receive from the defendant. The Supreme Court denied her cross motion in its entirety, granted the defendant's motion, and directed the plaintiff to adhere to the original terms and conditions of the visitation schedule.

It is well settled that the courts of this State will not permit a parent to relocate to a distant domicile which would effectively deprive the noncustodial parent of regular access to his or her children absent a showing of exceptional circumstances *(see, Meier v Meier,* 156 AD2d 348; *Blundell v Blundell,* 150 AD2d 321). Although the predominant concern is the best interest of the child, the resolution of such disputes requires a careful balancing of the rights and problems of both the child and of his or her parents *(see, Meier v Meier, supra; Schwartz v Schwartz,* 91 AD2d 628). In the case at bar, there is an insufficient basis in the record upon which to conclude that the best interests of the child would be served by relocating to Florida. Such a move would obviously deprive the defendant of reasonable access to his child and would effectively curtail his visitation rights, thereby depriving the child of the benefits of a regular and continuing paternal relationship *(see, Daghir v Daghir,* 82 AD2d 191, *affd* 56 NY2d 938; *Meier v Meier, supra; cf., Blundell v Blundell, supra).* Significantly, the plaintiff has failed to demonstrate exceptional circumstances which would relieve her of the terms of the stipulation she agreed to just six months prior to the bringing of her cross motion and which would warrant relocating with the child from New York to a distant domicile in Florida.

Additionally, we note that the defendant supplied adequate proof, namely bank statements, various affidavits, medical reports and laboratory reports, to counter the plaintiff's unsubstantiated assertions regarding his occupational status and drug and alcohol use. Accordingly, we find no basis on which to overturn the Supreme Court's determinations pertaining to

the visitation schedule and child support issues. Thompson, J. P., Lawrence and O'Brien, JJ., concur.

Miller, J., dissents and votes to reverse the order and remit the matter to the Supreme Court, Queens County, for a hearing and new determination, with the following memorandum: I must respectfully dissent from the majority's conclusion because, in my view, neither the defendant's motion nor the plaintiff's cross motion should have been decided without a hearing.

Concededly, the parties to this appeal did reach a stipulation of settlement pursuant to which the issues of custody, visitation, and the plaintiff's rights to unilaterally relocate were decided. While such stipulations generally should be enforced, where, in a case such as the one at bar, serious allegations suggest that a child may be endangered by such enforcement, it is incumbent upon the court to undertake a more probing inquiry to insure that the child's best interests are protected, than one limited solely to the consideration of motion papers.

It is uncontroverted that the defendant husband has had a history of chronic alcohol and drug abuse. To protect the child from exposure to these very evils, it was stipulated that he would enjoy visitation only so long as he remained drug and alcohol free. Notwithstanding this safeguard, the plaintiff, a registered nurse, believed that the defendant's appearance indicated that he was indeed under the influence of drugs during his visits with their son. Although the defendant presented a drug test result indicating that he was not under the influence of drugs in April 1989 his urine was not tested for the presence of alcohol. More significantly, however, even assuming that he was free of both drugs and alcohol in April 1989 this is by no means dispositive of his status from October 1988 through January 1989 when supervised visitation was being conducted in the plaintiff's residence, and when she believed that he appeared to be under the influence of drugs.

Furthermore, it was alleged, without dispute, that the defendant had physically abused the plaintiff and indeed, she obtained a divorce on the ground of cruel and inhuman treatment. This history, coupled with the defendant's drug and alcohol abuse and his present treatment for chronic depression, lead me to conclude that the plaintiff adduced sufficient evidence as to warrant a hearing, preceded by forensic evaluations (see, Matter of Erie County Dept. of Social Servs. [Elizabeth D.], 127 AD2d 971; Meisner v Meisner, 111

AD2d 788) to determine whether continued visitation pursuant to the parties' stipulation is still consistent with the promotion of the child's best interests.

Certainly, it is well settled that absent extraordinary circumstances establishing that visitation would be detrimental to a child's well being, a noncustodial parent has a right to reasonable visitation *(see, Matter of Thomas S. v Kathleen Z., 149 AD2d 599; Matter of Eric L. v Dorothy L., 130 AD2d 660).* However, in my opinion, the plaintiff has adduced enough credible evidence of such potentially extraordinary circumstances *(see, e.g., Matter of Scott L. v Bruce N., 126 AD2d 157)* as to warrant a hearing prior to reflexively enforcing the defendant's stipulated visitation rights. Indeed, his drug use alone, if proven, would constitute such an extraordinary circumstance *(see, Matter of Scott L. v Bruce N., supra; Matter of Jones v Payne, 113 AD2d 968; Wohlfahrt v Drees, 103 AD2d 1028).* Thus, on the facts of this case, the need for a hearing was critical.

Furthermore, the plaintiff's desire to relocate should have likewise been the subject of a hearing. The plaintiff fled the marital residence with her son in 1983 to escape the defendant's physical brutality. She fled in destitution but struggled, with the aid and love of her parents, to come off the welfare rolls and ultimately attained the position of a registered nurse at a Queens hospital. Despite her triumphs, however, the plaintiff's nurse's salary allows her and her son to reside in only a one-bedroom apartment. Her parents, who babysit for her son while she works, plan to retire to Florida. The plaintiff, a struggling single mother who is reliant upon her parents' loving care for her son, desires to relocate to Florida with them. She, the parent primarily responsible for the child's financial support, asserts that her earning power would be enhanced in Florida and to this end she has already earned a nursing license in that state. Furthermore, her preliminary investigations have revealed that she can obtain affordable and "more appropriate" housing in Florida to better provide for her son's development. Moreover, while the defendant actively seeks visitation now, it cannot be ignored that for almost five years, he allegedly had little contact with his son, (although the defendant claims that only three years passed without seeing his son and this was only because he was undergoing drug and alcohol detoxification). In short, the plaintiff makes out a strong case that relocating to Florida would advance her son's best interests.

As previously stated, a noncustodial parent has a right to

reasonable visitation privileges absent evidence of extraordinary circumstances that would render continued visitation detrimental to the child's well being *(see, Matter of Thomas S. v Kathleen Z.,* 149 AD2d 599, *supra; Matter of Eric L. v Dorothy L.,* 130 AD2d 660, *supra; Bubbins v Bubbins,* 114 AD2d 346).* While the instant record does not warrant such a finding of extraordinary circumstances, it clearly does warrant a hearing on the issue, which pertains to the child's safety. I also recognize that long-distance relocations which frustrate the noncustodial parent's visitation rights are rarely countenanced by the courts. The plaintiff has adduced sufficient evidence to require at least a hearing on the issue of whether the plaintiff's relocation would affect the child's standard of living *(see, Zaleski v Zaleski,* 128 AD2d 865; *Kozak v Kozak,* 111 AD2d 842). How else can the court resolve disputes which "entail * * * a careful balancing of the rights and problems of the child and his parents" *(Kozak v Kozak, supra,* at 843)?