■ ELLA LADIZHENSKY, Appellant, v ZINOVI LADIZHENSKY, Respondent.—In a matrimonial action in which the parties were divorced by a judgment dated December 12, 1983, the plaintiff wife appeals from an order of the Supreme Court, Queens County (Joy, J.), entered September 28, 1990, which granted the defendant husband's motion to transfer custody of the parties' child from the plaintiff wife to him unless she returned to New York with the child.

Ordered that the order is reversed, on the facts and as an exercise of discretion, with costs, the defendant's motion is denied, and the matter is remitted to the Supreme Court, Queens County, for further proceedings in accordance herewith.

The plaintiff and the defendant were married in June 1977. They had one son, Allen, who was born on June 20, 1982. The parties were divorced pursuant to a judgment dated December 12, 1983, in which a separation agreement was incorporated but not merged. Pursuant to the agreement, the plaintiff was given exclusive custody of the child and the defendant was awarded liberal visitation. In July 1990 the plaintiff moved to Kansas City where her new husband was employed, and where she entered chiropractic school. The defendant brought the instant application for a change of custody when the plaintiff moved from New York to Kansas City with Allen.

After a hearing, the Supreme Court, in the order appealed from, conditionally transferred sole custody of Allen to the defendant with liberal visitation to the plaintiff, if she failed to reestablish residence in New York. This appeal ensued, and enforcement of the order appealed from was stayed pending the determination of the appeal.

On appeal, the defendant maintains that his right to meaningful visitation with Allen would, in effect, be eliminated by his former wife's relocation with the child to Kansas City. The plaintiff argues that the Supreme Court erred in finding that no exceptional circumstances were established, urging that the circumstances surrounding her move, including remarriage and unique educational opportunity, constituted "excep-

tional circumstances" and furthermore, that relocation of Allen to Kansas City was in his best interest.

" 'It is the general policy of this State that a move by the custodial parent to a distant domicile will not be permitted when it would effectively deprive the noncustodial parent regular access to the child of the marriage' " *(Blundell v Blundell,* 150 AD2d 321, quoting from *Schwartz v Schwartz,* 91 AD2d 628, 629). The predominant concern is the child's best interests, although the resolution of such disputes also entails a careful balancing of both the rights and problems of the child and his or her parents *(see, Blundell v Blundell, supra).*

However, the general rule against relocation is not absolute and it will be permitted upon a showing of exceptional circumstances *(Matter of Bonfiglio v Bonfiglio,* 134 AD2d 426). Thus, notwithstanding the deference to be accorded to the findings of the trial court *(see, Eschbach v Eschbach,* 56 NY2d 167), we find that the Supreme Court's determination that no extraordinary circumstances exist in this case was not supported by the evidence *(see, Hemphill v Hemphill,* 169 AD2d 29; *Shedd v Sofia,* 134 AD2d 894, *affd* 70 NY2d 997; *Keating v Keating,* 147 AD2d 675). On the contrary, we find that the totality of circumstances herein are extraordinary *(Friederwitzer v Friederwitzer,* 55 NY2d 89; *Matter of Krom v Comerford,* 57 NY2d 704).

The record clearly indicates and the trial court found that the plaintiff's desire to relocate to Kansas City was not intended to inhibit the defendant's reasonable access to his son *(Blundell v Blundell, supra).* The move was premised upon her new husband's job with the United States Department of Agriculture located in Kansas City *(see, Martinez v Konczewski,* 85 AD2d 717, *affd* 57 NY2d 809), her failure to find suitable employment or an accredited chiropractic school in the New York metropolitan area, and her good-faith desire to improve the quality of life for her child.

Moreover, of particular significance in the present case is that the parties were divorced when Allen was 18 months old, and since that time, Allen has never resided with his father except for periods of visitation *(see, Keating v Keating, supra).* The longest visits between father and son appear to be those that took place for a period of a single month during the summers. The Court of Appeals has cautioned courts to be reluctant to transfer custody of a young child from the primary custodian who has cared for the child since birth *(see, Aberbach v Aberbach,* 33 NY2d 592). Of additional but more

limited significance is that the parties' separation agreement does not purport to restrict the geographical movements of the custodial parent (see, *Hemphill v Hemphill, supra; Zaleski v Zaleski,* 128 AD2d 865). We further note the persuasive fact that shortly after the parties' divorce, the defendant consented to the plaintiff's move to Florida with Allen due to demands of her employment. He visited the child in Florida, and was evidently willing to permit his son to live out of State with the plaintiff at that time. It was not until after his remarriage and establishment of a second family and when the plaintiff remarried and sought to establish a new life for herself that he changed his position, opposing her move out of State with their child. We note favorably that the plaintiff has expressed the desire to promote the defendant's visitation and has also provided a liberal visitation schedule which increases his summertime visitation to encompass the entire 2-½ month period, and all school holidays and recess periods. Thus, while the move may decrease the frequency of the defendant's visits, we find that the proposed visitation schedule will afford him regular and meaningful access to his child (see, *Zaleski v Zaleski, supra; Hemphill v Hemphill, supra*).

Moreover, we find that Allen's best interest will be served by continuing custody with the plaintiff who has been his primary custodian since birth. Neither party is unfit or unable to provide the child with a comfortable home and stable environment. Forensic evaluations performed two years prior to the order appealed from failed to result in any custodial change. The court's impression of Allen gleaned from the in camera interview was of an "alert, intelligent and well adjusted 8 year old". We therefore find no reason to disrupt the custodial arrangement agreed to by the parties which has proved beneficial to the child.

We recognize and disapprove of the court's failure to appoint a Law Guardian (see, *Koppenhoefer v Koppenhoefer,* 159 AD2d 113) and failure to record the in camera interview for appellate review as required by statute (CPLR 4019 [a]; Family Ct Act § 664; *Matter of Nehra v Uhlar,* 43 NY2d 242, 248; *Friederwitzer v Friederwitzer, supra),* since compliance with this procedure would have permitted a more thorough consideration of the child's best interests. However, in the context of this record, and where it is uncontroverted that Allen has flourished under his mother's custody, it is unnecessary to remit for a further hearing on custody modification.

We find there is no merit to the plaintiff's contention that the court failed to acquire in personam jurisdiction over her

since the jurisdictional predicates of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law art 5-A) were fully complied with, and she received notice and an opportunity to be heard (see, Domestic Relations Law § 75-e; *Matter of Tauber v Tauber*, 152 AD2d 674).

We therefore reverse and remit to the Supreme Court, Queens County, in order for the court to establish a liberal visitation schedule consistent with that proposed by the plaintiff. Lawrence, J. P., Miller, Ritter and Copertino, JJ., concur.