■ PATRICIA SMITH, Respondent, v PAUL T. FINGER, Appellant.—In a matrimonial action in which the parties were divorced by a judgment dated September 28, 1989, the defendant former husband appeals from (1) an order of the Supreme Court, Nassau County (Goldstein, J.), dated June 18, 1992, which, upon a motion by the plaintiff wife for permission to relocate with the child of the parties to the State of Virginia, and his motion to enjoin her relocation and to change custody, in effect, denied his application for an in-camera interview between the court and the child, and (2) an order of the same court, dated June 26, 1992, which denied his motion to enjoin the plaintiff former wife from relocating with the parties' infant son to the State of Virginia, and for a transfer of custody to him, and granted the motion of the wife for permission to relocate, awarded custody of the child to her, and awarded the plaintiff counsel fees and expenses.

Ordered that the orders are affirmed, with one bill of costs.

The parties were married in October 1985, and divorced pursuant to a judgment dated September 28, 1989. They have one son, Michael, who was born on April 9, 1986. The parties' separation agreement, which was incorporated by reference but did not merge with the judgment of divorce, provided for joint custody with each parent having physical custody of Michael during alternating weeks, until Michael's fifth birth-

day or until he enters kindergarten, whichever last occurs. Thereafter, and for the next three years, the plaintiff was to have weekday custody of Michael during the school year and the defendant was to have custody every weekend. After Michael's eighth birthday or when he entered the third grade, whichever last occurred, the custody arrangement would be reversed with the defendant having weekday custody during the school year and the plaintiff having custody on the weekends. During the summers, the parent with weekday custody would have custody on the weekends and vice versa.

The separation agreement also provided that, "[i]n the event that such a move becomes necessary", either parent shall have the "absolute right to relocate out of New York State to another geographical area, *including, but not limited to Boston or Washington,* so long as the new residence of that parent is within a one hour direct flight time to or from New York, exclusive of ground travel, plus one hour of ground travel to or from each airport and the residence of each parent, without causing a modification of the custody provisions contained herein" (emphasis added).

In December 1990 the plaintiff married a dentist with an established practice in Woodbridge, Virginia, a suburb of Washington, D.C. In March 1991, just prior to Michael's fifth birthday, the plaintiff applied to the Supreme Court, Nassau County, for authorization to relocate with Michael to Virginia. The defendant, in a separate motion, sought to enjoin the plaintiff from moving or to transfer custody of Michael to him. During the pendency of their applications, the parties agreed that Michael would reside with the plaintiff in Virginia during the week and visit with the defendant on the weekends. The plaintiff moved to Virginia on June 4, 1991.

After a lengthy hearing, the Supreme Court found that the joint custody arrangement in the parties' separation agreement was not in Michael's best interests and granted the plaintiff sole custody of Michael, with liberal visitation to the defendant. We affirm.

It is the general policy of this State that a move by the custodial parent to a distant domicile will not be permitted when it would effectively deprive the noncustodial parent of regular access to the child of the marriage. The predominant concern is the child's best interests, although the resolution of such disputes also entails a careful balancing of both the rights and problems of the child and his parents. The courts approach matters of this nature on a case-by-case basis. More-

over, this Court has emphasized that the decision of the trial court, which has evaluated the evidence firsthand, is to be accorded the greatest respect and will not be easily disturbed *(see, Zaleski v Zaleski,* 128 AD2d 865).

The trial court did not err in awarding custody of Michael to his mother. Unlike those cases relied on by the defendant in which the custodial parent was denied permission to move to a distant locale because of the damaging effects that such a move would have on the visitation rights of the noncustodial parent, in this case, the plaintiff's relocation would not effectively curtail the visitation rights of the defendant nor deprive him of regular and meaningful access to Michael *(see, Blundell v Blundell,* 150 AD2d 321, 324). The defendant has been awarded liberal visitation on alternate weekends, on the Jewish holy days, during one half of the Christmas recess and during the summer months, except for eight days to be designated by the plaintiff. Moreover, the trial court found that the plaintiff's desire to relocate to Virginia was not motivated by a bad faith desire to curtail the defendant's visitation *(see, Ladizhensky v Ladizhensky,* 184 AD2d 756; *Blundell v Blundell, supra).* In fact, the court-appointed psychiatrist testified that the plaintiff is the party who is more likely to encourage Michael to maintain a healthy relationship with the noncustodial parent *(see, Janecka v Franklin,* 150 AD2d 755). Further, the parties, who are both ophthalmologists, have the financial resources to pay for the travel which will be entailed in continuing the defendant's important and needed role in Michael's life *(cf., Kuzmicki v Kuzmicki,* 171 AD2d 843, 845; *Matter of Yeo v Cornaire,* 91 AD2d 1153, *affd* 59 NY2d 875).

Of additional significance is the fact that the plaintiff's move to Woodbridge, Virginia, a suburb of Washington, D.C., was permitted pursuant to the terms of the parties' separation agreement, which specifically authorized a move to the Washington, D.C., area *(see, Ladizhensky v Ladizhensky, supra; Zaleski v Zaleski, supra,* at 866; *Martinez v Konczewski,* 85 AD2d 717, 718, *affd* 57 NY2d 809; *cf., Leslie v Leslie,* 180 AD2d 620).* Furthermore, the recommendation of the court-appointed psychiatrist favored the relocation.

The trial court did not improvidently exercise its discretion in denying the defendant's request to interview Michael in camera *(see, Bazant v Bazant,* 80 AD2d 310, 312-313). Michael, who was only five years old at the time of the trial, was not competent to weigh intelligently the factors necessary to make a wise choice regarding custody *(see, Bazant v Bazant, supra).*

Moreover, the court-appointed psychiatrist found Michael to be "an intelligent, well-organized and well-developed child" who really wants to live with both parents. Thus, in this case, an interview with the child would not have served any useful purpose (see, Mascoli v Mascoli, 132 AD2d 653, 654; Bazant v Bazant, supra; Falkides v Falkides, 40 AD2d 1074).

Nor did the trial court improvidently exercise its discretion in awarding counsel fees and expenses to the plaintiff, in view of the inordinate amount of time that the defendant's case consumed on both direct and cross-examination (see, Domestic Relations Law § 237; DeCabrera v Cabrera-Rosete, 70 NY2d 879; Schussler v Schussler, 109 AD2d 875, 878). Bracken, J. P., Copertino, Pizzuto and Santucci, JJ., concur.