(May 24, 1994)

■ GEORGE C. ROUSH, Appellant, v GILLIAN R. ROUSH, Respondent. [612 NYS2d 394] —Order, Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered on September 1, 1993, which confirmed the Special Referee's report only to the extent that it recommended that there be no change in the commencement time for appellant's weekend visitation, and disaffirmed the report in all other respects, and granted permission for defendant to move the custodial residence to New Haven, Connecticut, is modified, on the law, the facts, and in the exercise of discretion, to the extent of confirming the report in its entirety, and otherwise affirmed, without costs.

This appeal arises from an application by the respondent mother to alter the terms of a separation agreement that survives the decree of divorce. The parties have two children, Hannah and David, ages ten and eight. The motion court referred the issues to a Special Referee to hear and report on the application of respondent to relocate the custodial residence to New Haven, Connecticut from New York City, and to modify the terms of visitation. The Special Referee recommended that the application be denied. The motion court disaffirmed the report of the Special Referee and granted the application almost in its entirety. We reverse and confirm the report.

The Special Referee conducted four days of hearings that included extensive testimony by the parties, the children's respective therapists, the Headmaster of the Day School the children attended, and in camera interviews with the children. We are satisfied that the Referee's report is well supported by the record when considered in light of applicable legal standards.

The threshold issue before the motion court was respondent's application to move the custodial residence to New Haven, Connecticut from Manhattan. The separation agreement, dated February 28, 1992, provides: "It is the Wife's intention to reside within a 30 mile radius of her present residence with the Children ('the Radius Area'). For so long as the husband resides in the Radius Area, the Wife agrees not to remove the residence of the Children from the Radius Area without first securing the express written permission of the Husband or an order of a court of competent jurisdiction of the State of New York, County of New York."

Where there is a specific agreement limiting the geographical location of the custodial residence and the custodial parent applies for judicial relief from such agreed upon terms, the applicant must not only show exceptional circumstances warranting the change in the best interests of the children *(see, Coniglio v Coniglio,* 170 AD2d 477), but the law also "requires that the interests which might justify such a relocation by the custodial parent be balanced against the noncustodial parent's fundamental human right to frequent visitation" *(Rybicki v Rybicki,* 176 AD2d 867, 870).

In *Rybicki,* the parties entered a stipulation that the custodial residence would be maintained by the mother in the Town of Huntington or Smithtown until the youngest of the three children attained eighteen years of age. When the mother remarried and sought to move the custodial residence to Fairfield County, Connecticut to accommodate her new husband's employment, the Court denied permission to relocate the custodial residence in large part on the basis of the degree of involvement of the non-custodial parent in the daily lives of his children which the Court described in words that equally apply to the present case: "the former husband [is] exceptionally involved in the day to day parenting of his children. In essence, he had structured his life so as to participate actively in the children's interests and activities" (176 AD2d, *supra,* at 870).

Appellant works in Manhattan as the director of a medical research institute which he founded and finances. He has structured his work life so as to have the flexibility to maintain his active involvement in his children's lives. Respondent is currently enrolled as a student in the Pace University Law School in White Plains. While the family initially lived in New Haven, it is the clear intent of the separation agreement to limit the permissible geographical location of the custodial residence to communities closer to appellant's workplace than

New Haven. There is no evidence of any substantial or unanticipated change in circumstances since the date of the separation agreement. Pursuant to the separation agreement, respondent received a substantial lump sum payment. Appellant is also financially secure. Thus, there is no issue of economic necessity that would constitute an exceptional circumstance justifying the move (see, Matter of Atkinson v Atkinson, 197 AD2d 771).

In disaffirming the Referee's report, the motion court held that respondent did not have to prove the existence of exceptional circumstances because the move to New Haven is a "reasonable distance" that "will amount to little if any disruption in the father's relationship with the children." Any fair reading of the record must lead to the conclusion that the one hour and forty-five minute train ride to New Haven will disrupt the substantial involvement of appellant in the daily lives of the children during the week. Accordingly, the motion court's holding that respondent is not required to demonstrate the existence of exceptional circumstances is erroneous as a matter of law (see, Matter of Radford v Propper, 190 AD2d 93).

Turning to the facts of this case, we find that on this record there is no showing of exceptional circumstances that would warrant abrogation of the geographical limitation in the best interests of the children. The record clearly establishes that appellant is an active parent whose involvement in his children's lives is extensively detailed in the motion court's decision. He takes the children to school two mornings a week. He meets them after school on Wednesday evenings. He accompanies them to their friends' birthday parties and gives them birthday parties every other year. He arranges play dates and takes them to parks and museums. He attends parent-teacher conferences and special school functions during school hours. It is this extensive involvement by appellant during the week that would be lost if respondent is permitted to alter the terms of the agreement and move to New Haven. Weighed against this significant and beneficial involvement by appellant in the lives of his children is nothing more than respondent's desire to reside in a more suburban setting, albeit one where the family does have substantial connection, and to renew and continue social contacts in that community. The reasons for the proposed move set forth by respondent, to live in a more suburban environment where the children can enjoy trees and grass and live less structured lives can be accomplished by living in communities within the radius area, that would be more accessible to appellant on a daily basis. In

any event, these lifestyle considerations do not amount to "exceptional circumstances" *(see, Strahl v Strahl,* 66 AD2d 571, *affd* 49 NY2d 1036).

The evidence with respect to the interests of the children in moving to New Haven as opposed to remaining in New York is at best equivocal. There is nothing in the record that would constitute an exceptional circumstance with respect to the interests of the children that would be advanced by a move to New Haven. The issue of special education needs is of no significance inasmuch as there was no evidence that the education opportunities in New Haven were more appropriate. Indeed, on balance, the interests of the children appear to be better served by the continuity of the Day School with frequent contact with their father during the week. We agree with the Special Referee that the children's best interests would not be served by moving to New Haven.

In disaffirming the Special Referee's report, the motion court held that it was not supported by the record because there was no record evidence of "special educational needs" on the part of Hannah, which the report referred to, and because the report overlooked essential facts in the record. The only facts the motion court then refers to are the extent of the family's historic contacts with New Haven, and the claims of respondent's alleged interference with appellant's visitation. Neither of these factual recitations are relevant to the threshold issue of relieving respondent from her agreement to maintain the custodial residence within the radius area, in the absence of exceptional circumstances.

With respect to the issues regarding mid-week visitation by appellant, we agree with the Referee that the schedule should not be altered and that the best interests of the children would be served by having their father take them to school two mornings a week. To the extent that there are issues as to the lateness of the children and their father's angry reaction to this recurrent problem, the conclusion of the Special Referee that the children's best interests are served by continuing this schedule should have been accorded greater deference by the motion court. The Special Referee heard the testimony of the witnesses, and was in a position to assess their demeanor and credibility *(see, Eschbach v Eschbach,* 56 NY2d 167, 173; *Matter of Fringo v Riccio,* 171 AD2d 963, 964).

The motion court improvidently exercised its discretion by granting permission to move the custodial residence to New Haven on the basis of an insupportable construction of the

record evidence that the move would "amount to little if any disruption in the father's relationship with the children." By not applying the exceptional circumstances test, the motion court improperly avoided the requirement of balancing the rights and interests of both parents in determining what would serve the best interests of the children. Applying the correct standard of law, it is clear that the report of the Special Referee should be confirmed in its entirety. Concur— Murphy, P. J., Wallach and Williams, JJ.

Asch, J., dissents in a memorandum as follows: It is a postulate of appellate review that the reviewing tribunal will defer to the factual determinations of the trial court. While we in the New York Appellate Division have authority to make different findings from the Trial Judge, based upon our own reading of the record (see, Eschbach v Eschbach, 56 NY2d 167, 173), we usually rely on the trial court's factual findings.

I am persuaded that the Justice at Trial Term, who decided that the children should be permitted to move to New Haven, where the family has substantial roots, was correct both on the law and on the circumstances presented. Accordingly, I dissent.

The parties were married on January 28, 1983 in New Haven, Connecticut and purchased a home there. The couple lived in New Haven with their two children during the major portion of their married life. The children attended schools there. In fact, the family continued to live in New Haven even after plaintiff began work in Manhattan, commuting daily between New Haven and Manhattan.

In 1988 the parties acquired a cooperative apartment in Manhattan. Although the family lived there on weekdays they returned to New Haven for weekends, holidays and summers. The children were then enrolled in the Day School in New York City. Plaintiff's current position is Director of the Cancer Prevention Research Institute, a nonprofit organization which he formed. He does not collect a salary for his work and, through a family trust, is the primary contributor to the Institute.

The couple separated in June of 1991. They alternated weekends with the children at the New Haven residence until shortly after they executed a separation agreement on February 28, 1992. This agreement is incorporated into and survives the divorce decree which followed in September of 1992.

The majority, in reversing the trial court, places great reliance on the language of the agreement which states in

part that: "It is the intention of the parties that the visitation with the Husband is to be generous and liberal and in the event that there has to be an adjustment of visitation for any reason, the adjusted visitation will be as comparable as possible to the present arrangements. It is the Wife's intention to reside within a 30 mile radius of her present residence with the Children (the 'Radius Area'). For so long as the Husband resides in the Radius Area, the Wife agrees not to remove the residence of the Children from the Radius Area without first securing the express written permission of the Husband or an Order of a court of competent jurisdiction of the State of New York, County of New York."

Despite mandating that plaintiff receive full and complete information concerning any school that the children may attend, it is significant that the agreement does *not* require his consent to a change of schools. It is also significant that the agreement expressly allows the mother to vary the 30 mile residence limitation with the consent of the father *or* by court order. Here, it was the court which authorized the mother to deviate from the 30 mile residence rule.

Plaintiff continues to live primarily in Manhattan but has retained substantial connections with New Haven. He regularly employs the services of a housekeeper at his New Haven home and maintains telephone and cable TV service there. He has a bank account in New Haven for which the statements are mailed to his New Haven house. His housekeeper, who is a signatory on the account, writes checks on it on an ongoing basis. Plaintiff has a Connecticut driver's license, and his automobile, which is registered in that State, is kept parked at the New Haven train station. Moreover, he has kept up his membership in the New Haven Lawn Club.

The Supreme Court found in its decision, in pertinent part:

"I have thoroughly examined the entire record, including the transcripts of the four days of testimony before the Referee by each of the parties and their witnesses (including each of the children's therapists and the headmaster of the Day School in Manhattan), the sealed transcripts of both my and the Referee's *in camera* interviews with the children, and the documentary exhibits marked in evidence at the hearing. Based upon my examination I find that while some of the Referee's observations are accurate, many appear to be based upon surmise rather than fact. As one example, the report frequently refers to the mother's purported lack of consideration of the children's 'special educational needs' or 'educa-

tional needs' in the sought after relocation. The Referee also discusses the necessity of 'special school facilities' required to meet such needs. Nowhere can it found in the record that the children, or either of them, have 'special educational needs' or require 'special school facilities' other than the normally-expected supportive school environment. Nowhere in the record can it be found that the Day School in Manhattan, in which both of the children have been enrolled since 1988, provides the children with 'special school facilities' or arranges anything different in relation to other children to support Hannah's or David's 'special' needs * * *

"More important, essential facts in the record have been overlooked by the Referee, the lack of consideration of which tends to skew the focus of the report and ultimately, its recommendations. I find that the report is not supported by the record as a whole and that the undisputed facts do not warrant the conclusions reached. * * *

"When the Agreement was signed in February 1992 the mother purchased a new residence in New Haven at which she and the children have continued their practice of spending their weekends, holidays and summers in New Haven. The mother has testified, in essence, that she purchased her New Haven residence to replace the New Haven residence she gave up on signing the Agreement to be able to continue her and the children's association in the community where they have longstanding ties and friendships. The mother has continued her membership, since 1985, in the New Haven Lawn Club and the children regularly participate in the Club's activities. The mother also leased an apartment on East 81st Street in Manhattan where she and the children reside during the week.

"The father resides at East 76th Street and Park Avenue in Manhattan. Before the Agreement was signed he apparently continued to spend his weekends with the children primarily at the parties' former family residence in New Haven. Since the Agreement was signed he has spent his weekends with the children primarily in Manhattan. However, he commutes to New Haven with the children each Friday that he has them for Hannah's standing appointment with her psychiatrist, Dr. Perlswig, whose office is located there. They usually have supper in New Haven and return to Manhattan by train the same day. The train ride takes approximately one hour and 45 minutes each way. The father continues to spend three of his four non-consecutive weeks in the summer with the children at his residence in New Haven * * *

"Both of the children's psychiatrists do not advocate, nor do they oppose, the children's moving from Manhattan. Upon any move from Manhattan, both psychiatrists recommend New Haven over any other place not within reach of the Day School. Both doctors believe that the father's involvement in the children's lives is generally positive and should not be diminished, except to the extent of the Tuesday and Thursday morning pre-school pickups as to which both doctors recommend they not be resumed.

"The children are confident about their father's interest in them and his involvement in their lives. They believe he will continue to spend his time with them if they were to move to New Haven. The frequent train rides to New Haven with him are viewed as ordinary by the children."

As for the view expressed by the Referee (and the majority here) that the relocation to New Haven should be prohibited, the Judge commented that "[i]t is not every move that requires a showing that exceptional circumstances exist to warrant relocation, however. The high exceptional circumstances test is brought to bear only if the relationship between the non-custodial parent and the child would be disrupted by the move" (citing *Matter of Radford v Propper,* 190 AD2d 93), as "[t]he court's inquiry must begin with whether the proposed relocation is to a 'reasonable distance' such that visitation remains possible and the move is not motivated by an intent to deprive the non-custodial parent of visitation".

The record herein clearly shows that defendant wishes to move to New Haven for the purpose of improving the environment for herself and the children and not to frustrate plaintiff's visitation and that, at any rate, she is not endeavoring to transfer to a place inconvenient to plaintiff but to a community where he has pervasive and enduring ties. As the Supreme Court noted, defendant had not manifested a history of attempting to deprive plaintiff of his visitation with the children, and there is no reason why he cannot remain deeply devoted to their education, school functions and social activities. The move to New Haven would, as Trial Term concluded, "amount to little if any disruption in the father's relationship with the children," considering the father's ties to that location and his present domicile there.

We are presented with a true irony. Our Court prevents the mother from moving to New Haven where, as noted, she and the children have extensive friendships and an existing social network, as does the father. However, nothing will now pre-

vent the mother from moving to Scarsdale or some other location within the 30 mile radius and, thus, avoiding the need for the consent of either the father or a court under the agreement and, in effect, making it more difficult for the father to spend time with the children than if the mother moved to New Haven.