[627 NYS2d 819]

In the Matter of KENNETH WRIGHT, Appellant, v SHARON WRIGHT, Respondent.

Third Department, June 8, 1995

## APPEARANCES OF COUNSEL

*Kelleher & Flink,* Latham *(John D. Charles* of counsel), for appellant.

*Michael T. Horan,* Schenectady *(Louise M. Harding,* Burnt Hills, of counsel), for respondent.

## OPINION OF THE COURT

PETERS, J.

The parties were married in 1984 in Virginia and, after several moves necessitated by petitioner's employment, ultimately moved in 1988 to the Town of Clifton Park, Saratoga County. Two children were born of the marriage: Cassandra, born in 1987, and Jesse, born in 1989.

In July 1989, petitioner left the marital residence and in August 1990 respondent petitioned Family Court for custody. It resulted in an amended order dated May 20, 1991 providing for joint custody, with physical possession of the children with respondent and visitation with petitioner on Saturdays from 10:00 A.M. until 5:00 P.M. The order further provided that in the event respondent and the children left New York, petitioner would have visitation consisting of no less than five nonconsecutive one-week periods per year until February 1996 and six nonconsecutive one-week periods per year thereafter. In the event of such move, respondent was to provide all transportation until February 1996 and petitioner was responsible thereafter.

On July 24, 1991 the parties, each represented by counsel, negotiated a separation agreement which, *inter alia,* provided no amendment or modification except by agreement in writing executed with the same formality as the separation agreement. It additionally acknowledged that the parties "ascertained and weighed all of the facts, conditions and circumstances likely to influence their judgment" before the execution thereof and reiterated the full joint legal custodial arrangement, including the visitation and transportation provisions detailed by Family Court. The agreement further specified that "[respondent] shall notify [petitioner] at least sixty (60) days prior to permanently removing the children from New York State. [Petitioner] hereby consents to such removal and [respondent] consents to a modification of the visitation schedule as [previously] set forth". It also contemplated home schooling by respondent.

The parties were divorced by judgment dated March 12, 1992 which incorporated, but did not merge, the terms of the separation agreement and continued the amended order of Family Court. Such order was subsequently modified to provide for overnight visitation.

In June 1992, respondent began corresponding with Theodore Grey in Mississippi and met him a few months later. In October 1992, respondent gave petitioner the requisite 60-day written notice of her intent to relocate to Mississippi. On December 21, 1992, petitioner sought relief from Family Court in the form of a change in custody or a restraining order preventing respondent from removing the children. Family Court denied the request for the restraining order and left open the issue of custody pending a hearing. Respondent and the children moved to Mississippi on December 31, 1992.

Petitioner thereafter commenced this proceeding in Supreme Court seeking an injunction and, this time, a modification of the divorce judgment to delete all language allowing for relocation. Petitioner thereafter withdrew the custody petition from Family Court and brought a supplemental petition in Supreme Court for a declaratory judgment that respondent does not have the right to remove the children from the State and, if correct, to permanently enjoin her from doing so.

At trial, both parties were represented by counsel and a Law Guardian represented the children. By such time, respondent had married Grey and was pregnant with his child. Respondent, Grey, Grey's 11-year-old daughter from a prior marriage and the two subject children all then resided in a house purchased by respondent and Grey. Respondent did not work outside of the home and devoted her time to the household and the home schooling of the subject children. Supreme Court, detailing 102 findings of fact, found the existence of exceptional circumstances justifying the relocation and concluded that the best interests of the children would be served by remaining with respondent in Mississippi.

Petitioner primarily contends on appeal that there are no exceptional circumstances which would justify the relocation and that the best interests of the children require their return to New York. While we agree with the result reached by Supreme Court, we do so on different grounds. Petitioner correctly contends that "visitation is a joint right of both the noncustodial parent and the child" *(Matter of Dacey v Dacey,* — AD2d —, —, 1995 NY Slip Op 3153 [3d Dept, Apr. 6, 1995])* and that "[i]n most situations, the best interests of children are served by a continuing relationship with both parents" *(Matter of Bennett v Bennett,* 208 AD2d 1042; *see, Weiss v Weiss,* 52 NY2d 170). Hence, a general policy of this State has emerged that "a move by the custodial parent to a distant

locale which effectively deprives the noncustodial parent of regular access to the child gives rise to the presumption that such relocation is not in the child's best interest" *(Matter of Dacey v Dacey, supra,* at —; *see also, Weiss v Weiss, supra,* at 175). Such presumption can be rebutted upon a showing of exceptional circumstances by the relocating parent *(see, Shultz v Schultz,* 199 AD2d 1065, 1066; *Matter of Clark v Dunn,* 195 AD2d 811, 813; *Hathaway v Hathaway,* 175 AD2d 336, 337).

The rule has emerged as a way of preserving the "joint right of the noncustodial parent and * * * the child" *(Weiss v Weiss, supra,* at 175), "particularly where that relationship has been carefully nurtured by regular, frequent and welcomed visitation" *(Matter of Schaefer v Brennan,* 170 AD2d 879, 880). It has been applied where the parties had not previously contemplated that the custodial parent would relocate with the child *(see, Matter of Dacey v Dacey, supra; Matter of Skeval v Skeval,* 210 AD2d 751; *Matter of Bennett v Bennett, supra; Matter of MacCue v Chartier,* 208 AD2d 1107), where after the parties had entered into an agreement not to relocate more than a specified distance, the custodial spouse sought to relocate further *(see, e.g., Roush v Roush,* 204 AD2d 195; *Matter of Niemiec v Hunsberger,* 203 AD2d 731; *Cmaylo v Cmaylo,* 76 AD2d 898), and where the parties had entered into a separation agreement and such agreement either did not restrict the geographical movements of the custodial parent *(see, e.g., Ladizhensky v Ladizhensky,* 184 AD2d 756; *Hemphill v Hemphill,* 169 AD2d 29, *appeal dismissed* 78 NY2d 1070; *Zaleski v Zaleski,* 128 AD2d 865, *lv denied* 70 NY2d 603) or it contained language with respect to relocation that was deemed either subject to interpretation *(see, Weiss v Weiss, supra)* or not dispositive *(see, Matter of Towne v Towne,* 154 AD2d 766). Hence, we now return to the established wisdom of the Court of Appeals which over a decade ago recognized that "[t]he only absolute in the law governing custody [and visitation] of children is that there are no absolutes" *(Friederwitzer v Friederwitzer,* 55 NY2d 89, 93).

Here, the parties entered into an agreement which was memorialized by Family Court in its amended order, which not only acknowledged that respondent was permitted to relocate but also contained clear and precise terms regarding visitation and transportation. The parties further memorialized that agreement, after the passage of time, in a separation agreement, later incorporated but not merged in a judgment of divorce which again reflected that the parties contemplated

a move outside of the State and again reiterated the negotiated change in visitation and transportation should such a relocation occur. While " '[p]riority, not as an absolute but as a weighty factor, should, in the absence of extraordinary circumstances, be accorded' to that agreement" *(Eschbach v Eschbach,* 56 NY2d 167, 171, quoting *Matter of Nehra v Uhlar,* 43 NY2d 242, 251; *see, Matter of Schaefer v Brennan, supra),* "[n]o agreement of the parties can bind the court to a disposition other than that which a weighing of all of the factors involved shows to be in the child's best interest" *(Friederwitzer v Friederwitzer, supra,* at 95; *see, Kennedy v Kennedy,* 128 AD2d 840). We hold that in the circumstances here presented, where there is no evidence of any substantial or unanticipated change since the date of the separation agreement or judgment incorporating it therein *(see, Roush v Roush,* 204 AD2d 195, 197, *supra),* no basis exists for the implementation of the "exceptional circumstances" test before permitting a custodial parent to relocate within negotiated terms.

Thus, the relevant inquiry remains whether such proposed relocation is in the children's best interests. According great deference to Supreme Court's factual findings *(see, Matter of Towne v Towne, supra,* at 767; *Matter of Ostrander v Ostrander,* 150 AD2d 944), we find that it properly concluded that the best interests of the children are served by allowing them to remain in Mississippi. Clearly, the record reflects that petitioner's visitation with the children remains frequent and meaningful and that respondent negotiated the change in visitation to insure his continued access. Yet, other than petitioner's employment, the parties have no connection to New York and the record clearly reflects that petitioner is subject to relocation at the direction of his employer and flies frequently in the course of his work.

Petitioner further testified, consistent with his psychologist, that respondent has been the primary caretaker of the children and that it would not be in their best interests to be separated from her. Moreover, it was evident that petitioner did not seek to have custody awarded to him since he did not have a concrete plan for how he would care for the children in the event that the children were ordered back to New York. The Law Guardian's report fully supported the result reached.

Accordingly, we find that the custody and visitation arrangement in the parties' separation agreement, incorporated into the judgment of divorce, is in the children's best interests.

We therefore affirm Supreme Court's finding that a move will be allowed in accordance therewith *(see, Potier v Potier,* 198 AD2d 180; *Smith v Finger,* 187 AD2d 711, *lv dismissed and denied* 82 NY2d 704).

To insure the "preservation of those 'best interests' " *(Martinez v Konczewski,* 85 AD2d 717, *affd* 57 NY2d 809), however, we will further liberalize the visitation provisions of the judgment to "render the existing schedule of * * * visitation more meaningful to both the child and the noncustodial parent * * * to insure the frequency, quality and regularity of such visits" *(supra,* at 717). Mindful of the recommendations of the Law Guardian and the psychologist supporting relocation, and noting that our determination does not affect the parties' agreement regarding transportation expenses, we direct that petitioner shall be allowed no less than 14 weeks of visitation per year, which shall be comprised of five two-week consecutive blocks of visitation during the school year and one four-week consecutive block of visitation during the summer. We find such modification to be not only equitable, but feasible in light of the parties' agreement to home school the children.

Supreme Court's order is hereby modified to include 14 weeks of visitation by petitioner as so detailed herein and, as so modified, affirmed.

CARDONA, P. J., WHITE, CASEY and SPAIN, JJ., concur.

Ordered that the order is modified, on the facts, without costs, by granting petitioner 14 weeks of visitation with the two children in accordance with this Court's decision, and, as so modified, affirmed.